# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| **DIANE HAWKINS, individually and on behalf of all of those similarly situated,** | Case No. 1:19-cv-00638-TSB |
| AND | Judge Timothy S. Black<br>Magistrate Judge Karen L. Litkovitz |
| **ETHAN RYDER, individually and on behalf of all of those similarly situated,** | **ORAL ARGUMENT REQUESTED** |
| Plaintiffs, | |
| v. | |
| **WELLS FARGO BANK, N.A.,** | |
| Defendant. | |

## DEFENDANT WELLS FARGO BANK, N.A.'S
## MOTION TO DISMISS THE COMPLAINT

PLEASE TAKE NOTICE that, by and through its counsel listed below, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby moves this Court for an Order granting its Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and Fed. R. Civ. P. 9(b), for failure to state with particularity the circumstances constituting fraudulent concealment. This motion is based on the supporting memorandum of law submitted herewith, as well as oral argument of counsel and such other and further material as the Court may consider.

Pursuant to Local R. Civ. P. 7.1(2), Wells Fargo's counsel requests oral argument on this Motion to Dismiss.

Dated:  October 7, 2019

Respectfully submitted,

/s/ Scott A. King
Scott A. King (0037582)
THOMPSON HINE LLP
Austin Landing I
10050 Innovation Drive, Suite 400
Miamisburg, OH 45342-4934
Telephone: 937.443.6560
Scott.King@ThompsonHine.com

Amanda L. Groves (*pro hac vice* pending)
Kobi Kennedy Brinson (*pro hac vice* pending)
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: 704.350.7747
agroves@winston.com
kbrinson@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

 I.  Legal Standard ............................................................................................... 3

 II.  Plaintiffs Fail to State a Claim for Breach of Contract (Count I). ......................... 4

   A.  An Application for a Trial Loan Modification Is Not a Contract. .............. 5

   B.  Plaintiffs Fail to Plead the Essential Elements of a Contract.................... 5

   C.  Plaintiffs Do Not Allege Consideration or Mutuality of Obligation. ......... 7

   D.  The Applications Do Not Satisfy the Statute of Frauds............................ 8

 III.  Plaintiffs Fail to State a Claim for Fraudulent Concealment (Count II)................. 9

   A.  Plaintiffs' Fraudulent Concealment Claims Fail Because Wells Fargo Did Not Have a Legal Duty to Disclose. ........................................ 9

   B.  Plaintiffs Do Not Plausibly Allege the Other Elements of Fraudulent Concealment. ................................................................... 10

     1.  Plaintiffs Cannot Plausibly Allege That Wells Fargo Knowingly Concealed the Calculation Error. .............................. 10

     2.  Plaintiffs Fail to Allege an Intent to Mislead.............................. 12

 IV.  Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress (Count III). ........................................................................................ 13

   A.  Plaintiffs Do Not Allege Extreme and Outrageous Conduct. ................... 13

   B.  Plaintiffs Do Not Allege the Severe and Debilitating Emotional Distress Required by Ohio Law............................................................ 16

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*425 Beecher, LLC v. Unizan Bank*,
2010-Ohio-412 (10th Dist. 2010) ............................................9

*Allen v. Andersen Windows, Inc.*,
913 F. Supp. 2d 490 (S.D. Ohio 2012) ....................................9

*Allied Erecting & Dismantling Co. v. Uneco Realty Co.*,
765 N.E.2d 420 (7th Dist. 2001).............................................6

*Alligood v. Proctor & Gamble Co.*,
72 Ohio App. 3d 309 (1st Dist. 1991)......................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................3, 4

*Bailey v. Searles-Bailey*,
140 Ohio App. 3d 174 (7th Dist. 2000) ..................................15

*Banford v. Aldrich Chem. Co.*,
2010-Ohio-2470 (2010) .......................................................16

*Bassett v. NCAA*,
528 F.3d 426 (6th Cir. 2008) .................................................4

*Bear v. Del. Cty.*,
No. 2:14-cv-43, 2014 U.S. Dist. LEXIS 166997 (S.D. Ohio Dec. 2, 2014)............13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................3, 4

*Blon v. Bank One, Akron, N.A.*,
35 Ohio St.3d 98 (1988)........................................................9

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)............................................................14

*Bolander v. BP Oil Co.*,
128 F. App'x 412 (6th Cir. 2005) .....................................14, 16

*Burkes v. Stidham*,
107 Ohio App. 3d 363 (8th Dist. 1995) ..................................15

*Estate of Ciotto v. Hinkle*,
    2019-Ohio-3809 (6th Dist. 2019) ...............................................................15, 16

*Citimortgage, Inc. v. Crites*,
    No. 11 CVE-3793, 2012 Ohio Misc. LEXIS 1299 (Ct. Com. Pl. Mar. 8, 2012)......................4

*In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ...............................................................................3

*De Angelis v. Nolan Enters.*,
    No. 2:17-cv-926, 2018 U.S. Dist. LEXIS 162575 (S.D. Ohio Sep. 24, 2018) ........................7

*Dooley v. Wells Fargo Bank, N.A.*,
    941 F. Supp. 2d 862 (S.D. Ohio 2013) ...............................................................15, 17

*Dumont v. Litton Loan Servicing, LP*,
    No. 12-CV-2677-ER-LMS, 2014 WL 815244 (S.D.N.Y. Mar. 3, 2014) ...............................14

*Elfers v. Varnau*,
    101 F. Supp. 3d 753 (S.D. Ohio 2015) ..................................................................14

*ELM Invs., Inc. v. BP Expl. & Oil, Inc.*,
    2012-Ohio-2950 (10th Dist. 2012) .........................................................................8

*FHLMC v. Gilbert*,
    656 F. App'x 45 (6th Cir. 2016) ...........................................................................5

*Frazier v. Navistar Int'l Transp. Corp.*,
    C.A. Case No. 99-CA-89, 2000 Ohio App. LEXIS 1714 (2d Dist. 2000)...............................6

*Green v. Bank of Am. Corp.*,
    530 F. App'x 426 (6th Cir. 2013) ........................................................................14

*Hartman v. Smith*,
    2005-Ohio-3299 (9th Dist. 2005) ........................................................................15

*Hirsch v. Wells Fargo Bank, N.A.*,
    No. 1:13-cv-01489, 2014 U.S. Dist. LEXIS 29587 (N.D. Ohio Mar. 7, 2014) ......................14

*Homan v. George*,
    127 Ohio App. 3d 472 (10th Dist. 1998) ...............................................................15

*In re Huffy Corp. Secs. Litig.*,
    577 F. Supp. 2d 968 (S.D. Ohio 2008) ..................................................................11

*KeyBank N.A. v. Estate of Wright*,
    2006-Ohio-4643 (6th Dist. 2006) ..........................................................................8

*Kiwewa v. Brennan*,
No. 1:15-cv-815, 2016 U.S. Dist. LEXIS 73592 (S.D. Ohio June 6, 2016) ............................4

*Klott v. Assocs. Real Estate*,
41 Ohio App. 2d 118 (10th Dist. 1974) ...............................................................................12

*Knoop v. Orthopaedic Consultants of Cincinnati, Inc.*,
2008-Ohio-3892 (12th Dist. 2008) .....................................................................................6, 7

*Koyo Corp. v. Comerica Bank*,
No. 1:10 CV 2557, 2011 U.S. Dist. LEXIS 111880 (N.D. Ohio Sep. 29, 2011) ...............9, 13

*United States ex rel. Kustom Prods. v. Hupp & Assocs.*,
No. 2:15-cv-03101, 2017 U.S. Dist. LEXIS 72814 (S.D. Ohio May 12, 2017).....................12

*Lee v. Countrywide Home Loans, Inc.*,
692 F.3d 442 (6th Cir. 2012) ..................................................................................................9

*Li-Conrad v. Curran*,
2016-Ohio 1496 (11th Dist. 2016)........................................................................................10

*Long v. Insight Commc'ns. of Cent. Ohio, LLC*,
804 F.3d 791 (6th Cir. 2015) ................................................................................................14

*Marchetti v. Blankenburg*,
2011-Ohio-2212 (12th Dist. 2011) ................................................................................5, 7, 8

*Miller v. First Safety Bank*,
No. 1:14-CV-368, 2014 WL 12586315 (S.D. Ohio Dec. 30, 2014)..................................10, 12

*Minaya v. NVR, Inc.*,
2017-Ohio-9019 (8th Dist. 2017) ...............................................................................10, 12, 13

*New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495 (6th Cir. 2003) ..................................................................................................4

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007) ................................................................................................11

*Paugh v. Hanks*,
6 Ohio St. 3d 72 (1983)...................................................................................................16, 17

*Peters v. Monroe Twp. Bd. of Trs.*,
No. 2:11-cv-00083, 2011 U.S. Dist. LEXIS 92300 (S.D. Ohio Aug. 18, 2011) ....................16

*Prendergast v. Snoeberger*,
154 Ohio App. 3d 162 (7th Dist. 2003) ..................................................................................7

*Provident Bank v. Adriatic, Inc.*,
2005-Ohio-5774 (12th Dist. 2005) ....................................................................15

*R+L Carriers, Inc. v. Qualcomm, Inc.*,
No. 1:09-cv-445, 2016 U.S. Dist. LEXIS 133432 (S.D. Ohio Sept. 28, 2016) ......11

*Rayess v. Educ. Comm'n for Foreign Med. Graduates*,
983 N.E.2d 1267 (2012)...................................................................................5

*Ruckman v. Jenkins*,
No. 2:13-cv-814, 2014 U.S. Dist. LEXIS 121257 (S.D. Ohio Aug. 28, 2014) ....3, 4

*Rulli v. Fan Co.*,
683 N.E.2d 337 (1997)......................................................................................6

*Snyder v. United States*,
990 F. Supp. 2d 818 (S.D. Ohio 2014) ...........................................................13, 14

*Stepp v. NCR Corp.*,
494 F. Supp. 2d 826 (S.D. Ohio 2004) ................................................................8

*Swartz v. Carlo*,
No. 1:12CV3112, 2015 WL 1022073 (N.D. Ohio Mar. 6, 2015)....................16, 17

*Wells Fargo Bank, N.A. v. Favino*,
No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618 (N.D. Ohio Mar. 31, 2011)....4, 17

*Yahner v. Kerlin*,
2003-Ohio-3967 (8th Dist. 2003) ......................................................................12

*Yeager v. Local Union 20*,
6 Ohio St. 3d 369 (1983)..................................................................................14

**Statutes**

R.C. 1109.15(E) .................................................................................................9

R.C. 1322.081(B).................................................................................................9

R.C. 1335.04 ......................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................10, 12

Fed. R. Civ. P. 12(b)(6)...................................................................................3, 4, 10

*Black's Law Dictionary* (11th ed. 2019)...............................................................12

## PRELIMINARY STATEMENT

Plaintiffs Diane Hawkins and Ethan Ryder, former mortgagors whose loans were serviced by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), filed this putative class action seeking damages for trial loan modifications erroneously denied by Wells Fargo, which they assert ultimately resulted in the loss of their properties.  Plaintiffs allege three causes of action (breach of contract, fraudulent concealment, and intentional infliction of emotional distress ("IIED")) against Wells Fargo, all of which fail as a result of readily identifiable pleading defects: (i) a unilateral loan modification application is not a contract as a matter of law, and Plaintiffs' attempt to manufacture such a claim through creative labeling fails; (ii) Wells Fargo did not owe Plaintiffs a legal duty to disclose the calculation error; and (iii) the calculation error and Plaintiffs' allegations of concealment fall far short of the outrageous conduct required for an Ohio IIED claim, as do their claims of emotional harm.  These deficiencies strip Plaintiffs' allegations of plausibility such that they fail to state each of their claims.  The Complaint should be dismissed in its entirety.

## BACKGROUND

Plaintiffs' claims concern mortgage loans previously serviced by Wells Fargo.  Compl. ¶ 36.  Plaintiffs admit that, as a result of various financial hardships, they were not able to meet their mortgage obligations and defaulted on their loans.  *Id*. ¶¶ 109-112, 126-133.  According to Plaintiffs, they sought to modify their loans, but Wells Fargo improperly denied their applications due to a calculation error in its modification software.  *Id*. ¶¶ 114, 128.  While Plaintiffs do not allege that they would have been able to successfully make the required payments under either a trial or permanent modification plan, Plaintiffs claim that the erroneous denials resulted in the eventual loss of their properties by foreclosure sale or short sale.  *Id*. ¶¶ 117, 140.

Plaintiff Hawkins's property went into foreclosure in September 2006. *Id.* ¶ 110. For the next eight years—from 2007 until 2015—she lived in the property payment free, and filed for bankruptcy twice, preventing Wells Fargo from foreclosing. *Id.* ¶¶ 112, 117; RJN Ex. A, Chapter 13 Voluntary Petition; RJN Ex. B, Chapter 7 Voluntary Petition.[1] Hawkins alleges that she applied for a loan modification in May 2010 but was erroneously denied in August 2010. *Id.* ¶ 114. On September 14, 2018, Hawkins received a letter from Wells Fargo informing her of a calculation error that had impacted the decision on one of her trial loan modification applications. *Id.* ¶ 120; Compl. Ex. A. The letter enclosed a $13,000 check to "help make up for [any] financial loss" and offered Hawkins the option to participate in a third-party mediation with Wells Fargo if she did not feel that Wells Fargo had "made things right." *Id.* ¶¶ 120, 122; Compl. Ex. A. Hawkins cashed the check and requested mediation but failed to respond to Wells Fargo's attempts to schedule the mediation. This lawsuit followed.

Plaintiff Ryder defaulted on his loan in late 2011, but lived in the property payment free for nearly two years before selling it in a short sale in August 2013. Compl. ¶¶ 126-127, 133, 138, 140. Ryder alleges that he applied for a loan modification in late 2011, and that Wells Fargo erroneously denied him a trial modification on February 2, 2012. *Id.* ¶¶ 127-128. Ryder also alleges that he submitted a second loan modification application to Wells Fargo, which was denied on June 18, 2012. *Id.* ¶ 131. Ryder does not allege this denial was wrongful. On September 12, 2018, Ryder received a letter from Wells Fargo informing him of a calculation error that had impacted the decision on one of his trial loan modification applications. *Id.* ¶ 145; Compl. Ex. A. The letter enclosed a $15,000 check to "help make up for [any] financial loss" and offered Ryder

---

[1] Wells Fargo has submitted herewith a Request for Judicial Notice ("RJN") of certain publicly filed court documents, as well as documents referred to in the Complaint that are central to the claims contained therein.

the option to participate in a third-party mediation with Wells Fargo if he did not feel that Wells Fargo had "made things right." *Id.* ¶ 147; Compl. Ex. B. Ryder cashed the check but did not attempt to mediate with Wells Fargo, instead retaining counsel and filing a pre-action discovery proceeding against Wells Fargo in Ohio state court (*see* Compl. ¶¶ 147-148),[2] followed by this lawsuit.

Plaintiffs filed their Complaint on August 2, 2019, alleging that the calculation error resulted in erroneous trial loan modification denials that caused them to lose their properties. Based on those allegations, Plaintiffs bring claims for breach of contract, fraudulent concealment, and intentional infliction of emotional distress.

## ARGUMENT

### I.      Legal Standard

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must consider "whether the complaint alleges sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 926 (6th Cir. 2014) (internal citations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (discussing plausibility standard); *Ruckman v. Jenkins*, No. 2:13-cv-814, 2014 U.S. Dist. LEXIS 121257, at *6 (S.D. Ohio Aug. 28, 2014) ("plaintiff's factual allegations must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to

---

[2] Prior to filing this class action Complaint, counsel for Plaintiffs filed, in various jurisdictions, three pre-action discovery proceedings (including Ryder's) and two federal actions against Wells Fargo, on behalf of individual plaintiffs purporting to have claims arising from the calculation error.

relief"). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Ruckman*, 2014 U.S. Dist. LEXIS 121257, at *6 ("The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

When considering a Rule 12(b)(6) motion to dismiss, a court "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). In addition to public records, materials subject to judicial notice include "exhibits attached [to the complaint], . . . items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Kiwewa v. Brennan*, No. 1:15-cv-815, 2016 U.S. Dist. LEXIS 73592, at *4 (S.D. Ohio June 6, 2016); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## II. Plaintiffs Fail to State a Claim for Breach of Contract (Count I).

To state a claim for breach of contract under Ohio law, a complaint must allege: (1) the existence of a contract; (2) performance by plaintiff; (3) breach by defendant; (4) resulting damages to plaintiff; and (5) consideration. *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 U.S. Dist. LEXIS 35618, at *26 (N.D. Ohio Mar. 31, 2011); *Citimortgage, Inc. v. Crites*, No. 11 CVE-3793, 2012 Ohio Misc. LEXIS 1299, at *3 (Ct. Com. Pl. Mar. 8, 2012). Here, Plaintiffs purport to have entered into contracts with Wells Fargo through *applications* they submitted for trial loan modifications, each of which Plaintiffs refer to as a "Modification Contract" or a "Form Contract." *See, e.g.,* Compl. ¶¶ 60, 168. Plaintiffs base their breach of contract claims on the following allegations:

(1) the applications were signed by Plaintiffs (Compl. ¶ 171);

(2) the applications "required" Plaintiffs to provide authority to investigate their financial status and agree to credit counseling (Compl. ¶ 169);

(3) "In consideration," Wells Fargo "agreed" via the applications "to evaluate" Plaintiffs for "temporary payment plan[s] or modification program[s] in compliance with GSE, HUD, and HAMP requirements" (Compl. ¶ 170);

(4) Wells Fargo did not offer Plaintiffs any "temporary payment plan" or trial loan modifications (Compl. ¶ 173); and

(5) Plaintiffs suffered harm in connection with the loss of their properties (Compl. ¶¶ 174, 179).

These allegations fail to meet the standard for breach of contract under Ohio law.

## A. An Application for a Trial Loan Modification Is Not a Contract.

As a threshold matter, Plaintiffs' breach of contract claims fail on their face for the simple reason that Plaintiffs' loan modification applications are not contracts. *Marchetti v. Blankenburg,* 2011-Ohio-2212, ¶ 10 (12th Dist. 2011) ("The existence of an enforceable contract is a prerequisite to a claim for breach of contract."); *Rayess v. Educ. Comm'n for Foreign Med. Graduates,* 983 N.E.2d 1267, 1272 (2012) (an application is a "mere request . . . [for] an opportunity"—"not an express written contract"). Indeed, the Sixth Circuit has rejected this theory, reasoning that "[n]ow, as ever, an application when made is not a contract," including an application to modify a loan. *FHLMC v. Gilbert,* 656 F. App'x 45, 46 (6th Cir. 2016) (applying Tennessee law). Plaintiffs' labeling of their applications as "Form Contract(s)" or "Modification Contract(s)" does not overcome this principle. *See Rayess,* 983 N.E.2d at 1272; *Gilbert,* 656 F. App'x at 46. Plaintiffs' breach of contract claims should be dismissed on this ground alone.

## B. Plaintiffs Fail to Plead the Essential Elements of a Contract.

Even if Plaintiffs' loan modification applications could be valid contracts, their breach of contract claims would still fail because Plaintiffs cannot establish the essential elements of a

contract in this case, including acceptance of an offer and manifestation of mutual assent, *i.e.*, a meeting of the minds on the key terms. *Frazier v. Navistar Int'l Transp. Corp.*, C.A. Case No. 99-CA-89, 2000 Ohio App. LEXIS 1714, at *12 (2d Dist. 2000); *Allied Erecting & Dismantling Co. v. Uneco Realty Co.*, 765 N.E.2d 420, 425 (7th Dist. 2001). Indeed, far from evidencing a meeting of the minds, Plaintiffs' applications show the opposite: that Wells Fargo did not offer to provide them with trial loan modifications based on the submission of the applications alone. *See* RJN Ex. C, a true and correct copy of a form application for a loan modification, dated May 19, 2010 and submitted to Wells Fargo by Diane Jaynes (Hawkins), at Acknowledgment No. 7 ("I/we understand that . . . the Servicer is not obligated to offer me assistance based solely on the statements in this document."); RJN Ex. D, a true and correct copy of a form application for a loan modification, dated May 15, 2012 and submitted to Wells Fargo by Ethan Ryder, at Acknowledgment No. 7 (same). Stated differently, Plaintiffs expressly acknowledged that their applications were simply an opportunity for them to be considered for a trial loan modification. *See id.* (the application will be used "to evaluate [the] eligibility for a [trial] loan modification or short sale or deed-in-lieu of foreclosure"). Accordingly, there was no meeting of the minds regarding the terms of any contract, which makes Plaintiffs' breach of contract claims defective. *See, e.g.*, *Knoop v. Orthopaedic Consultants of Cincinnati, Inc.*, 2008-Ohio-3892, ¶ 14 (12th Dist. 2008) (affirming dismissal on motion to dismiss where there was no meeting of the minds because essential term was not agreed upon).

Moreover, the applications' vague, indefinite language about what steps Wells Fargo would take upon receipt, and the uncertainty regarding what Plaintiffs would receive as a result, also dooms the contract claim. *See, e.g.*, *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (1997). Indeed, Plaintiffs do not even attempt to allege that their supposed contract with Wells Fargo contained

the most essential of terms: what their trial monthly payment would be, what their interest rate would be, and what the length of their trial repayment term would be. Without these terms, the alleged contract is "indefinite at the time of its making," and therefore unenforceable. *See Knoop*, 2008-Ohio-3892, at ¶ 14 (citing *Alligood v. Proctor & Gamble Co.*, 72 Ohio App. 3d 309, 311-12 (1st Dist. 1991)).

### C.    Plaintiffs Do Not Allege Consideration or Mutuality of Obligation.

Plaintiffs also do not allege consideration and mutuality of obligation, which go to the heart of contract formation. It is black letter law that, in order for a contract to be enforceable, there needs to be consideration—*i.e.*, the "bargained for legal benefit and/or detriment" underlying the contract. *Marchetti,* 2011-Ohio-2212, ¶ 10. Plaintiffs allege that in applying for the trial loan modifications, they provided standardized form applications, certified under penalty of perjury that the information provided on the applications was truthful, provided authorization to investigate their financial status, and agreed to credit counseling. Compl. ¶¶ 169-172. Plaintiffs claim that, in "consideration," Wells Fargo agreed to evaluate their eligibility for a trial loan modification and "offer [them] the best temporary payment plan or modification program for which they were eligible." *Id.* ¶ 170.

These allegations do not show consideration. Indeed, the Complaint is devoid of allegations that any "benefit flow[ed] to [Wells Fargo]" as a result of its willingness to evaluate Plaintiffs' applications; it is likewise devoid of allegations that Plaintiffs suffered any "legal detriment" from the mere act of submitting their applications. *See Prendergast v. Snoeberger*, 154 Ohio App. 3d 162, 168 (7th Dist. 2003). Absent consideration, there can be no enforceable contract for Wells Fargo to have breached. *See, e.g., De Angelis v. Nolan Enters.*, No. 2:17-cv-926, 2018 U.S. Dist. LEXIS 162575, at *10-11 (S.D. Ohio Sep. 24, 2018) (holding arbitration agreement void and unenforceable for lack of consideration).

Moreover, without consideration, Plaintiffs' alleged contract also lacks mutuality of obligation, which requires that "both parties to the contract must be bound or neither is bound." *See, e.g., Stepp v. NCR Corp.*, 494 F. Supp. 2d 826, 834 (S.D. Ohio 2004). Critically, Plaintiffs do not allege that, had Wells Fargo offered them a trial loan modification, they were obligated to accept it—and, indeed, they were not. Lacking mutuality of obligation, the trial loan modification applications are not enforceable agreements and, accordingly, cannot support Plaintiffs' breach of contract claims. *See id.* at 834-35 (without mutuality of obligation, there is no enforceable contract).

### D. The Applications Do Not Satisfy the Statute of Frauds.

Finally, the applications are not enforceable contracts because they do not satisfy the Statute of Frauds. Ohio's Statute of Frauds requires contracts affecting an interest in land to be in writing and signed by the grantor. R.C. 1335.04; *KeyBank N.A. v. Estate of Wright*, 2006-Ohio-4643, ¶ 22 (6th Dist. 2006). Here, the supposed "contracts"—the applications—pertain to modification of loans secured by residential real estate, for which Wells Fargo would be the "grantor." *See* RJN Exs. C & D. Plaintiffs allege that they signed the applications, but they do not (and cannot) allege that Wells Fargo did. Compl. ¶ 171; *see* RJN Exs. C & D. "Contracts" affecting an interest in land that are not signed by the grantor do not satisfy the Statute of Frauds, cannot be enforced, and cannot support breach of contract claims as a matter of law. *See, e.g.*, *ELM Invs., Inc. v. BP Expl. & Oil, Inc.*, 2012-Ohio-2950, ¶ 14 (10th Dist. 2012) (affirming dismissal of complaint on motion to dismiss because plaintiffs did not allege that agreement to purchase property was in writing and signed by defendants).

Because the applications are not enforceable agreements, Plaintiffs' breach of contract claims necessarily fail and should be dismissed with prejudice. *See, e.g.*, *Marchetti,* 2011-Ohio-2212, ¶ 10.

**III.  Plaintiffs Fail to State a Claim for Fraudulent Concealment (Count II).**

    **A.  Plaintiffs' Fraudulent Concealment Claims Fail Because Wells Fargo Did Not Have a Legal Duty to Disclose.**

Although Plaintiffs claim that Wells Fargo "ha[d] a continuous duty to disclose,"[3] that is not the law.  Instead, "[e]xisting Ohio case law describes the traditional relationship between borrower and lender as one conducted at arm's length with no duty of disclosure" in the context of fraudulent concealment.  *Lee v. Countrywide Home Loans, Inc*., 692 F.3d 442, 450 (6th Cir. 2012) (citing *Blon v. Bank One, Akron, N.A.,* 35 Ohio St.3d 98, 101-102 (1988)).  Likewise, "[s]tate statutory law creates a similarly detached relationship between traditional lenders, banks, and their debtors."  *Lee,* 692 F.3d at 450 (citing R.C. 1109.15(E); R.C. 1322.081(B) (exempting lenders from most of mortgage brokers' fiduciary duties)).

Where, as here, Plaintiffs have not "suggest[ed] that they shared a special relationship with their lender," courts, including the Sixth Circuit, have declined to "impose a fiduciary duty to disclose" on lenders.  *Lee,* 692 F.3d at 450; *cf. 425 Beecher, LLC v. Unizan Bank*, 2010-Ohio-412, ¶ 52 (10th Dist. 2010) (in Ohio, "the relationship of debtor and creditor, without more, is not a fiduciary relationship," and "a bank and its customers stand at arm's length in negotiating terms and conditions of a loan").  Plaintiffs here have not pled and cannot plead facts to establish that Wells Fargo had any legal duty to disclose anything to them.  The failure to plead such a duty is fatal to Plaintiffs' fraudulent concealment claim.  *See Allen v. Andersen Windows, Inc.,* 913 F. Supp. 2d 490, 514 (S.D. Ohio 2012) (granting motion to dismiss fraudulent concealment claim where allegations did not "give[] rise to [defendant's] duty to speak"); *Koyo Corp. v. Comerica Bank*, No. 1:10 CV 2557, 2011 U.S. Dist. LEXIS 111880, at *20-23 (N.D. Ohio Sep. 29, 2011)

---

[3] Compl. ¶ 167.

(dismissing fraudulent concealment claim on Rule 12(b)(6) motion where Plaintiff failed to allege facts to establish a legal duty to disclose).

**B.** **Plaintiffs Do Not Plausibly Allege the Other Elements of Fraudulent Concealment.**

In addition to a duty to disclose, a claim for fraudulent concealment under Ohio law comprises the following elements: "1) there was an actual concealment, 2) of a material fact, 3) with knowledge of the concealment, 4) with the intent to mislead another into relying, 5) which causes justifiable reliance by a party with a right to rely, and 6) the relying party suffers damages as a result." *Li-Conrad v. Curran*, 2016-Ohio 1496, ¶ 36 (11th Dist. 2016). "All [of] these elements must be present, and the absence of any element precludes recovery." *Minaya v. NVR, Inc.,* 2017-Ohio-9019, ¶ 12 (8th Dist. 2017). Even if Wells Fargo had a legal duty to disclose (and it does not), Plaintiffs' allegations nonetheless fail, because they do not (and, indeed, cannot) plausibly allege these remaining elements of the claim. Under Federal Rule of Civil Procedure 9(b), "the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity," and a "plaintiff who invokes the doctrine of fraudulent concealment is held to stringent rules of pleading and evidence." *Miller v. First Safety Bank,* No. 1:14-CV-368, 2014 WL 12586315, at *5 (S.D. Ohio Dec. 30, 2014).

**1.** **Plaintiffs Cannot Plausibly Allege That Wells Fargo Knowingly Concealed the Calculation Error.**

First, Plaintiffs allege that Wells Fargo "misrepresented" eligibility information to the putative class. *See, e.g.,* Compl. ¶ 180 ("Defendant misrepresented to Plaintiffs and members of the Proposed Class their eligibility for modification options."). However, Plaintiffs do not allege that Wells Fargo even knew of the calculation error until at least a year after it denied Plaintiffs' trial modification applications. *Compare* Compl. ¶ 114 (Hawkins's trial modification denial occurred in August 2010) *and* Compl. ¶¶ 128, 131 (Ryder's trial modification denials occurred in

February and June 2012) *with* Compl. ¶ 90 (alleging Wells Fargo knew about the calculation error in August 2013) *and* Compl. ¶ 29 (Wells Fargo "identifi[ed]" the calculation error in October 2015).

Moreover, Plaintiffs' allegations include the 2019 testimony of Wells Fargo's then-CEO in front of the House of Representatives Financial Services Committee, explaining that (i) Wells Fargo's understanding in October 2015 was that "the [calculation] error had not harmed customers," but (ii) Wells Fargo learned in 2018 that the calculation error had "impacted loan modification decisions between April 2010 and October 2015"—the same year that information was disclosed in the August 2018 10-Q and communicated directly to Plaintiffs. Compl. ¶¶ 29, 89. By acknowledging that Wells Fargo actually learned of the impact on loan modification denials in 2018—not 2013 or 2015—Plaintiffs have pled themselves out of the knowledge element of their fraudulent concealment claim. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 457-58 (6th Cir. 2007) ("While we must accept all of a claimant's allegations as true at [the motion to dismiss] stage of a case, that does not mean we must *ignore* those allegations when they defeat the claim . . . Nothing prevents a plaintiff from pleading itself out of court, which is all that happened here."); *R+L Carriers, Inc. v. Qualcomm, Inc.*, No. 1:09-cv-445, 2016 U.S. Dist. LEXIS 133432, at *9 (S.D. Ohio Sept. 28, 2016).

Plaintiffs' allegations that Wells Fargo "either knew about its automated calculation errors . . . as well as their effects" or "should have known,"[4] and was "on notice since as early as 2010 of

---

[4] Compl. ¶ 182. This allegation contradicts Plaintiffs' acknowledgement of the fact that Wells Fargo did not know the calculation error "impacted loan modification decisions" until 2018. *See* Compl. ¶ 29 (citing Congressional testimony). This contrary allegation (Compl. ¶ 182) should be disregarded. *See, e.g.*, *In re Huffy Corp. Secs. Litig.*, 577 F. Supp. 2d 968, 1009 (S.D. Ohio 2008) (dismissing claims predicated on allegations that were contradicted by plaintiffs' other allegations based on publicly available sources).

seriously deficient, unsafe, and unsound practices in its loan servicing, modification, and foreclosure programs"[5] do not change this result. "Whether defendant 'should have known' . . . is not probative of defendant's actual knowledge and is irrelevant to a determination of fraud" or fraudulent concealment.[6] *Yahner v. Kerlin*, 2003-Ohio-3967, ¶ 30 (8th Dist. 2003). As Plaintiffs cannot satisfy the requisite knowledge element, the fraudulent concealment claim should be dismissed.

### 2. Plaintiffs Fail to Allege an Intent to Mislead.

If there is no intent to mislead, there can be no fraudulent concealment claim. *Minaya,* 2017-Ohio-9019, ¶ 15. "[A] simple failure to disclose a fact is not equivalent to its concealment." *Klott v. Assocs. Real Estate,* 41 Ohio App. 2d 118, 121 (10th Dist. 1974). "[A] distinction is made between the concealment of a fact and the failure to disclose a fact. The former implies a purpose—a design; the latter does not." *Id*. at 121-122.

Plaintiffs have not made any allegations that Wells Fargo intended to mislead them. Indeed, Plaintiffs' own allegations—and the letters Wells Fargo sent to Plaintiffs in 2018—show a mistake. *See, e.g.,* Compl. ¶ 76 (alleging denials caused by "errors in the tool and related errors"); Compl. Exs. A & B ("We made a mistake when we reviewed you for payment assistance."). A mistake is an "unintentional act, omission or error"[7]—the direct opposite of an intentional action taken to mislead. Under Ohio law, even "gross ineptitude" without a specific intent to mislead cannot constitute fraudulent concealment. *Minaya,* 2017-Ohio-9019, ¶ 15. Furthermore, Plaintiffs

---

[5] These vague, conclusory allegations also do not comply with Rule 9(b), which is yet another reason for dismissal. *Miller,* 2014 WL 12586315, at *5.

[6] Moreover, Plaintiffs' "allegations 'on information and belief' (*see, e.g*., Compl. ¶ 180) are insufficient under Rule 9(b)." *United States ex rel. Kustom Prods. v. Hupp & Assocs*., No. 2:15-cv-03101, 2017 U.S. Dist. LEXIS 72814, at *7 (S.D. Ohio May 12, 2017).

[7] *Black's Law Dictionary* (11th ed. 2019).

allege that the calculation error was due to "automated" processes—not any intentional, calculated act. *See, e.g.*, Compl. ¶ 1 ("automated" calculation errors "caused Defendant to wrongfully deny loan modifications"); *id.* ¶ 80 (Wells Fargo "identified an automated calculation error"); *id.* ¶¶ 181-182 ("automated" calculation errors "erroneously determin[ed]" Plaintiffs to be "ineligible for modification").

Because Wells Fargo has no legal duty to disclose, and Plaintiffs have failed to allege the remaining elements of fraudulent concealment, Plaintiffs' fraudulent concealment claims should be dismissed. *See, e.g.*, *Koyo*, 2011 U.S. Dist. LEXIS 111880, at *20-23; *Minaya*, 2017-Ohio-9019, ¶ 15.

## IV. Plaintiffs Fail to State a Claim for Intentional Infliction of Emotional Distress (Count III).

Lastly, the Complaint does not state an IIED claim under Ohio law. To successfully plead this claim, Plaintiffs must allege facts sufficient to show that (1) Wells Fargo intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to Plaintiffs; (2) Wells Fargo's conduct was extreme and outrageous; (3) Wells Fargo's conduct proximately caused Plaintiffs' psychic injury; and (4) Plaintiffs' emotional distress was so serious that no reasonable person could be expected to endure it. *Bear v. Del. Cty.*, No. 2:14-cv-43, 2014 U.S. Dist. LEXIS 166997, at *24-26 (S.D. Ohio Dec. 2, 2014) (applying Ohio law).

### A. Plaintiffs Do Not Allege Extreme and Outrageous Conduct.

To be "extreme and outrageous" under Ohio law, it is not enough that a defendant acted with tortious or even criminal intent, or that his conduct was characterized by "malice" or a degree of aggravation that would entitle a plaintiff to punitive damages for another tort. *Snyder v. United States*, 990 F. Supp. 2d 818, 835 (S.D. Ohio 2014) (applying Ohio law). A plaintiff's allegations

must go further, and provide a sufficient showing that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Snyder*, 990 F. Supp. 2d at 835 (citing *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 374-75 (1983)). As the Sixth Circuit aptly noted, "[t]o say that Ohio courts narrowly define extreme and outrageous conduct would be something of an understatement." *Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005).

Here, Plaintiffs allege that Wells Fargo failed to oversee, audit, or test its "automated calculation software," and that the software contained a calculation error that prevented them from receiving an offer for a trial loan modification. Compl. ¶¶ 186-87. Yet under Ohio law, mistakes—even extremely troubling ones—do not constitute "extreme and outrageous conduct."[8] *See, e.g.*, *Elfers v. Varnau*, 101 F. Supp. 3d 753, 766 (S.D. Ohio 2015) (not sufficiently outrageous for defendant to intentionally leave pieces of deceased's skull at death scene for family to clean up or to refuse to reunite pieces of skull with body, instead telling plaintiffs "to just dig a hole to bury the pieces"); *see also Long v. Insight Commc'ns. of Cent. Ohio, LLC*, 804 F.3d 791, 798 (6th Cir.

---

[8] Tacitly conceding that the actual conduct at issue—an "automated" calculation error—is not extreme and outrageous under Ohio law, Plaintiffs allege that unrelated, past conduct in connection with government consent orders supports this claim. Compl. ¶ 186; *see also id*. ¶¶ 64-72. These allegations cannot save Plaintiffs' IIED claim. *See Green v. Bank of Am. Corp.*, 530 F. App'x 426, 430-31 (6th Cir. 2013) (plaintiffs could not seek to enforce Consent Orders because "while the Consent Orders address servicing and foreclosure practices generally, they do not address any specific transaction and, most importantly, they do not address [p]laintiff in particular"); *Hirsch v. Wells Fargo Bank, N.A.*, No. 1:13-cv-01489, 2014 U.S. Dist. LEXIS 29587, at *9 (N.D. Ohio Mar. 7, 2014) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975)) ("a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to [be] benefitted by it"); *Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677-ER-LMS, 2014 WL 815244, at *20 (S.D.N.Y. Mar. 3, 2014) (rejecting as "unreasonable" the homeowners' assumption that evidence of potential misconduct in some instances—such as examples of prior consent orders—can be used to infer similar misconduct in all instances).

2015) (citing *Burkes v. Stidham*, 107 Ohio App. 3d 363, 374 (8th Dist. 1995) (affirming dismissal of IIED claim grounded in allegations of mistake).

Furthermore, a failure to offer loan mitigation options is not, as a matter of law, conduct so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *See Provident Bank v. Adriatic, Inc.*, 2005-Ohio-5774, ¶ 25 (12th Dist. 2005) (even allegations of fraud in connection with an offer to modify a loan do not provide a basis for an IIED claim); *see also Dooley v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 862, 868-69 (S.D. Ohio 2013) (dismissing IIED claim because homeowners' allegations of a series of intentional and untrue misrepresentations "[did] not come close to meeting Ohio's narrow definition of 'extreme and outrageous' conduct").

Plaintiffs' allegation that Wells Fargo discovered the calculation error "no later than 2015," but concealed the error from "government regulators and the public until 2018" (Compl. ¶ 187), does not change the outcome. Under Ohio law, concealment ordinarily cannot support an IIED claim. *Estate of Ciotto v. Hinkle*, 2019-Ohio-3809, ¶ 87 (6th Dist. 2019) ("concealment of the murder weapon and lies . . . do not rise to the level of outrageous conduct"); *Bailey v. Searles-Bailey*, 140 Ohio App. 3d 174, 182 (7th Dist. 2000) (While it "might be reprehensible and morally deficient" to have concealed the possibility of a husband's non-paternity of a child due to an adulterous affair, "we cannot state that such a concealment is one that is so clearly 'outrageous' and 'extreme in degree' that it fits within the umbrella of the tort of intentional infliction of emotional distress."). And, even in situations where concealment can support an IIED claim, such as where a defendant conceals the location of a deceased's remains, "the failure to disclose known information cannot be actionable as intentional infliction of emotional distress . . . in the absence of a duty." *Hartman v. Smith*, 2005-Ohio-3299, ¶¶ 21-22 (9th Dist. 2005) (citing *Homan v.*

*George*, 127 Ohio App. 3d 472, 477 (10th Dist. 1998) (affirming dismissal of IIED claim grounded in allegations of concealment); *see also Hinkle*, 2019-Ohio-3809, ¶ 87. And, as discussed *supra* Section III(A), Wells Fargo had no legal duty to disclose as a matter of Ohio law. Accordingly, Plaintiffs' allegations fall far short of Ohio's very narrow definition of extreme and outrageous conduct. *See Bolander*, 128 F. App'x at 419.

### B. Plaintiffs Do Not Allege the Severe and Debilitating Emotional Distress Required by Ohio Law.

Additionally, Plaintiffs have not alleged that they suffered "severe and debilitating" emotional injuries, as required for an Ohio IIED claim. *See Banford v. Aldrich Chem. Co*., 2010-Ohio-2470, ¶ 29 (2010). Such emotional distress "may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983).

Here, Plaintiffs make identical, boilerplate allegations that they "suffered significant mental anguish which affected [their] personal and professional relationships" (Compl. ¶¶ 119, 144) and that they suffered "significant stress and anxiety" (*id.* ¶¶ 123, 149).[9] On this basis alone, Plaintiffs' IIED claim should be dismissed because "[a]llegations that [multiple] Plaintiffs suffered the same severe emotional distress without some distinguishing factual allegations are by definition, conclusory, and are insufficient to state a claim." *Swartz v. Carlo*, No. 1:12CV3112, 2015 WL 1022073, at *5 (N.D. Ohio Mar. 6, 2015) (granting motion to dismiss IIED claim).

Plaintiffs' allegations that they suffered mental anguish, stress, anxiety, and injury to their personal and professional relationships (Compl. ¶¶ 119, 123, 144, 149) also fall short when

---

[9] Plaintiffs' allegation that they incurred "damages" (Compl. ¶ 189), in and of itself, cannot support an IIED claim. *Peters v. Monroe Twp. Bd. of Trs.*, No. 2:11-cv-00083, 2011 U.S. Dist. LEXIS 92300, at *12 n.4 (S.D. Ohio Aug. 18, 2011) ("After all, any significant economic loss will likely result in some level of emotional distress.").

compared to the Ohio Supreme Court's examples of allegations that *would* constitute severe emotional distress: *i.e.*, "traumatically induced neurosis, psychosis, chronic depression, or phobia." *Hanks*, 6 Ohio St.3d at 78. Indeed, there is no mention "of medical treatment, phobia, severe loss of the ability to eat, sleep, work, etc. . . ." *Swartz*, 2015 WL 1022073, at *7 (adding that allegations of "injury to [] personal and professional reputations, pain, and mental anguish" were nothing "more than legal conclusions"); *see also Favino*, 2011 U.S. Dist. LEXIS 35618, at *32-34 (dismissing IIED claim because allegations of "aggravation, frustration, sleepless nights and worry, [and] embarrassment" were "threadbare allegations without any factual support"); *Dooley*, 941 F. Supp. 2d at 868-69 (granting motion to dismiss IIED claim because plaintiffs "failed to specify the type and extent of their alleged emotional injuries").

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' Complaint should be dismissed in its entirety.


Dated: October 7, 2019                     Respectfully submitted,

                                           /s/Scott A. King
                                           Scott A. King (0037582)
                                           THOMPSON HINE LLP
                                           Austin Landing I
                                           10050 Innovation Drive, Suite 400
                                           Miamisburg, OH 45342-4934
                                           Telephone: 937.443.6560
                                           Scott.King@ThompsonHine.com

                                           Amanda L. Groves (*pro hac vice* pending)
                                           Kobi Kennedy Brinson (*pro hac vice* pending)
                                           WINSTON & STRAWN LLP
                                           300 South Tryon Street, 16th Floor
                                           Charlotte, NC 28202
                                           Telephone: 704.350.7747
                                           agroves@winston.com
                                           kbrinson@winston.com

                                           *Attorneys for Wells Fargo Bank, N.A.*

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on October 7, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Brian Flick
Daniel M. Solar
Marc E. Dann
The Dann Law Firm Co., LPA
P.O. Box 6031040
Cleveland, Ohio 44103

Clay M. Gatens
Devon A. Gray
Jeffers, Danielson, Sonn & Aylward, P.S.
2600 Chester Kimm Road
P.O. Box 1688
Wenatchee, WA 98807

          /s/Scott A. King       
          Scott A. King