**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| **DIANE HAWKINS, individually and on behalf of all of those similarly situated,** | Case No. 1:19-cv-00638-TSB |
| AND | Judge Timothy S. Black |
| **ETHAN RYDER, individually and on behalf of all of those similarly situated,** | Magistrate Judge Karen L. Litkovitz |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| **WELLS FARGO BANK, N.A.** | |
| Defendant. | |

**WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ........................................................................................................... 1

    I.     Plaintiffs Fail to State a Claim for Breach of Contract (Count I). ......................... 1

         A.     Plaintiffs Do Not Plausibly Plead a Meeting of the Minds on All Essential Terms. .................................................................................................. 1

         B.     The Complaint Does Not Allege Consideration or Mutuality of Obligation. ................................................................................................ 5

         C.     The Alleged Contracts Do Not Satisfy the Statute of Frauds. .................... 7

    II.    Plaintiffs Fail to State a Claim for Fraudulent Concealment (Count II).............. 10

         A.     Plaintiffs' Fraudulent Concealment Claim Fails for Lack of Legal Duty. 10

         B.     The Complaint Fails to Plead Facts Showing Knowledge of Concealment. ................................................................................................ 12

         C.     Plaintiffs Fail to Plausibly Allege an Intent to Mislead ........................... 13

    III.   Plaintiffs Fail to State an IIED Claim (Count III)................................................ 15

CONCLUSION........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*425 Beecher, LLC v. Unizan Bank*,
  2010-Ohio-412 (10th Dist. 2010) ........................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................15

*Atchison, Topeka & Santa Fe Ry. Co. v. Buell*,
  480 U.S. 557 (1987)............................................................................16

*Bainum v. Bakery*,
  2007 U.S. Dist. LEXIS 98799 (S.D. Ohio Feb. 23, 2007).....................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................15

*Blon v. Bank One, Akron, N.A.*,
  35 Ohio St. 3d 98 (1988)....................................................................10

*Bond v. Antero Res. Corp*
  2018 U.S. Dist. LEXIS 108219 (S.D. Ohio June 28, 2018) .............2, 11

*Cedar View, Ltd. v. Colpetzer*,
  2006 U.S. Dist. LEXIS 7018 (N.D. Ohio Feb. 24, 2006).....................11

*Estate of Ciotto v. Hinkle*,
  2019-Ohio-3809 (6th Dist. 2019) .......................................................16

*Clark v. Walt Disney Co.*,
  642 F. Supp. 2d 775 (S.D. Ohio 2009) ...............................................12

*Dixon v. Wells Fargo Bank, N.A.*,
  2012 U.S. Dist. LEXIS 137769 (E.D. Mich. Sept. 25, 2012)..................5

*Dooley v. Wells Fargo Bank, N.A.*,
  941 F. Supp. 2d 862 (S.D. Ohio 2013) ...............................................16

*ELM Invs., Inc. v. BP Expl. & Oil, Inc.*,
  2012-Ohio-2950 (10th Dist. 2012) .......................................................3

*Fifth Third Mortg. Co. v. Bell*,
  2013-Ohio-3678 (12th Dist. 2013) .......................................................8

*Fifth Third Mortg. Co. v. Perry*,
  2016-Ohio-7811 (4th Dist. 2016) ....................................................................9

*Graves v. Starbucks Coffee Co./Starbucks Corp.*,
  2016 U.S. Dist. LEXIS 111484 (S.D. Ohio Aug. 22, 2016) ..........................15

*Hammond v. Citibank, N.A.*,
  2012 U.S. Dist. LEXIS 129671 (S.D. Ohio Sep. 12, 2012) .............................8

*Hayslip v. Genuine Parts Co.*,
  2019 U.S. Dist. LEXIS 193139 (S.D. Ohio Nov. 6, 2019) .............................17

*Hernandez v. Wells Fargo, N.A.*,
  2019 U.S. Dist. LEXIS 93529, at *18 (N.D. Cal. June 3, 2019) ...................14

*JP Morgan Chase Bank, N.A. v. Spears*,
  2018-Ohio-917 (3d Dist. 2018)........................................................................9

*Kimball v. Orlans Assocs.*,
  651 F. App'x 477 (6th Cir. 2016) .....................................................................9

*KLG Mobile Intensive Co., LLC v. Salem Cmty. Hosp.*,
  2007-Ohio-603 (7th Dist. 2007) ......................................................................2

*Klott v. Assocs. Real Estate*,
  41 Ohio App. 2d 118 (10th Dist. 1974) .........................................................13

*Knoop v. Orthopaedic Consultants of Cincinnati, Inc.*,
  2008-Ohio-3892 (12th Dist. 2008) ..................................................................4

*Leal v. Holtvogt*,
  123 Ohio App. 3d 51 (2d Dist. 1998) .............................................................12

*Lee v. Countrywide Home Loans, Inc.*,
  692 F.3d 442 (6th Cir. 2012) ..........................................................................10

*Lisboa v. Tramer*,
  2012-Ohio-1549 (8th Dist. 2012) ...................................................................14

*Martin v. City of Broadview Heights*,
  2011 U.S. Dist. LEXIS 92466 (N.D. Ohio Aug. 18, 2011) ...........................17

*Martinez v. Flagstar Bank, FSB*,
  2016 U.S. Dist. LEXIS 94124 (E.D. Cal. July 18, 2016) ..............................17

*McCubbins v. BAC Home Loans Servicing, L.P.*,
  2012 U.S. Dist. LEXIS 5620 (S.D. Ohio Jan. 18, 2012) ........................7, 8, 9

*Miller v. First Safety Bank*,
    2014 WL 12586315 (S.D. Ohio Dec. 30, 2014) ...................................................................13

*Minaya v. NVR, Inc.*,
    2017-Ohio-9019 (8th Dist. 2017) ...................................................................13, 14

*In re Mocella*,
    2016 Bankr. LEXIS 2477 (Bankr. N.D. Ohio June 17, 2016) .................................................8

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ...................................................................12

*Ortega v. Wells Fargo Bank, N.A.*,
    2012 U.S. Dist. LEXIS 11409 (N.D. Ohio Jan. 31, 2012)....................................................4

*Orwell Natural Gas Co., Inc. v. Fredon Corp.*,
    2015 Ohio 1212 (11th Dist. 2015) ...................................................................6

*Prendergast v. Shoeberger*,
    154 Ohio App. 3d 162 (8th Dist. 2003) ...................................................................5

*Provident Bank v. Adriatic, Inc.*,
    2005-Ohio-5774 (12th Dist. 2005) ...................................................................17

*Quintana v. First Nat'l Bank*,
    1995 U.S. App. LEXIS 22567 (10th Cir. Aug. 16, 1995) ...................................................9

*Rhoades v. Chase Bank*,
    2010-Ohio-6537 (10th Dist. 2010) ...................................................................15

*Smith v. AmeriHome Mortg. Corp.*,
    2012 U.S. Dist. LEXIS 184094 (S.D. Ohio Nov. 26, 2012)....................................................4

*Stepp v. NCR Corp.*,
    494 F. Supp. 2d 826 (S.D. Ohio 2004) ...................................................................6

*Swartz v. Carlo*,
    2015 WL 1022073 (N.D. Ohio Mar. 6, 2015) ...................................................................15

*Umbaugh Pole Building Co. v. Scott*,
    390 N.E.2d 320 (1979)...................................................................10, 11

*Yahner v. Kerlin*,
    2003-Ohio-3967 (8th Dist. 2003) ...................................................................12

*Yeager v. Local Union 20*,
    453 N.E.2d 666, 669 (1983)...................................................................16

iv

**Statutes**

O.R.C. 1335.04 .................................................................................................................3

O.R.C. 1335.02 .................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 9(b) .........................................................................................................13

Fed. R. Civ. P. 12(b)(6).....................................................................................................13

Plaintiffs respond to Wells Fargo's Motion to Dismiss with an attempted sleight of hand—they now insist that the contract they allege Wells Fargo breached was always an implied-in-fact contract, not the express written contract that the face of their Complaint conveys. Plaintiffs, however, are not permitted to amend their pleadings through argument in an opposition brief; nor can doing so help them here. As described by Plaintiffs, the newly-asserted implied contract also suffers from fatal defects, lacking basic elements of any contract, including a meeting of the minds, consideration, and mutuality of obligation. It is also unenforceable under Ohio's Statute of Frauds.

Plaintiffs likewise fail to demonstrate that their tort claims have been adequately pled. They fail to save their fraudulent concealment claim: the Complaint contains no mention of the relationship of special trust Plaintiffs rely on to establish a duty to disclose; Plaintiffs provide no response to (and thus concede) Wells Fargo's argument that they pled themselves out of knowing concealment; and Plaintiffs' lack of allegations and contrary authority doom their intent-to-mislead allegations. Their intentional infliction of emotional distress ("IIED") claim fares no better: Plaintiffs' transparent plea that the Court abandon substantive Ohio law in favor of California law is inappropriate and cannot redeem their inability to allege sufficiently "severe and debilitating" emotional harm under Ohio's high IIED standard.

As none of Plaintiffs' arguments rescue their claims from the pleading deficiencies set forth in Wells Fargo's Motion, the Complaint in its entirety should be dismissed.

## **ARGUMENT**

### I. **Plaintiffs Fail to State a Claim for Breach of Contract (Count I).**

#### A. **Plaintiffs Do Not Plausibly Plead a Meeting of the Minds on All Essential Terms.**

Plaintiffs acknowledge, as they must, that "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." Opp'n at 13. To try to sidestep

that mandatory element, Plaintiffs appear to have abandoned the written "agreement" they exclusively insisted upon in their Complaint.[1] They now claim—for the first time—that they "plead a contract implied in fact, resting partly in parol and partly in writing." *Id*. But the Complaint is entirely devoid of allegations that the contract was "implied in fact," or that it was even partially "resting … in parol" (*see generally* Complaint), and Plaintiffs do not cite to any paragraphs from the Complaint when making this claim. Plaintiffs are thus prohibited from advancing this argument now. *See Bond v. Antero Res. Corp.*, No. 2:17-cv-14, 2018 U.S. Dist. LEXIS 108219, at *10 (S.D. Ohio June 28, 2018) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Even if Plaintiffs could belatedly assert this point in their Opposition, arguing that the parties had an "implied-in-fact" contract does not save Plaintiffs' breach of contract claim, as "the existence of … an implied-in-fact contract requires proof of all the elements of a contract," including a "meeting of the minds as to the terms of the transaction." *KLG Mobile Intensive Co., LLC v. Salem Cmty. Hosp.,* 2007-Ohio-603, ¶ 12 (7th Dist. 2007). The Opposition fails to make that showing, as it does not specify how or when the "implied in fact" contract was formed between the parties, or what Plaintiffs are relying on to determine that a meeting of the minds occurred. *See* Opp'n at 13-14.[2] Plaintiffs even concede that they have not pled all the terms of the alleged

---

[1] Rather, the Complaint alleges that "Plaintiffs and each member of the Proposed Class entered into a contract with Defendant," and "the terms of the contract are set forth in the uniform borrower assistance form," which Plaintiffs label the "Form Contract." Compl. ¶ 168; *see also id*. ¶ 171 ("The Form Contract governs the relationship between Plaintiffs and members of the Proposed Class and Defendant with regard to temporary payment plan and modification programs . . .. The Form Contract is signed by Plaintiffs and each member of the Proposed Class."); *id*. ¶ 60 ("To request a modification, the Program Documentation requires each borrower submit standardized form assistance applications, financial worksheets, hardship affidavits, and acknowledgement and agreements (the 'Modification Contract'))."

[2] Plaintiffs claim they provided "certifications, promises, agreements, and consents" to Wells Fargo by signing the alleged contract (Opp'n at 17) and, vaguely, that Wells Fargo

2

contract.  Opp'n at 16 (contending "[w]hether Plaintiffs can ultimately prove a meeting of the minds (even in light of missing terms)" is an issue that should survive the motion to dismiss).  And, because the Statute of Frauds is applicable here (*see infra* Section I.C), which requires contracts affecting an interest in land, including residential mortgage loan modifications, to be in writing and signed by the grantor or its authorized agent (*see* R.C. 1335.04; *ELM Invs., Inc. v. BP Expl. & Oil, Inc.*, 2012-Ohio-2950, ¶ 14 (10th Dist. 2012)), Plaintiffs are prohibited from relying on parol communications for the formation of this alleged contract.

Moreover, Plaintiffs' Opposition is muddled as to which contract they purport to have entered into with Wells Fargo, as they continue to base their claim on the "Form Contract," (Opp'n at 13), which, per the Complaint, refers to the written application to be considered for a loan modification (Compl. ¶ 168), *not* a contract "implied in fact."  But an application for a loan modification simply cannot constitute a binding contract, because (i) Ohio law and the Sixth Circuit have made abundantly clear that "an application when made is not a contract," and (ii) the applications, which Plaintiffs signed, plainly state on their face that Plaintiffs "understand that . . . the Servicer is not obligated to offer [them] assistance based solely on the statements in this document," and that the application was to be used "to evaluate [Plaintiffs'] eligibility" for a trial

---

"acknowledged" an "obligation to offer [trial loan modifications] to eligible borrowers in multiple relevant communications" (*id*. at 15).  But Plaintiffs do not explain *what* benefit Wells Fargo would have derived from those representations, or when or how the parties agreed to be bound to each other.  Further, the so-called "communications" that Plaintiffs reference are not borne out in their citations to the Complaint.  *See* Compl. ¶ 36 (no mention of such communications, instead stating that Wells Fargo "executes contracts across the United States and in the State of Ohio," and did so in connection with Plaintiffs' loans); *id*.  ¶  62 (generic reference to "relevant communications with borrowers" in which Wells Fargo allegedly "represent[ed] that it will extend trial period plans to any borrower who is eligible," without any specifics as to when those communications were made to these Plaintiffs or what they encompassed) (although Plaintiffs cite to ¶ 63, Wells Fargo assumes they meant to refer to ¶ 62 instead, given the respective subject matter of those paragraphs).

loan modification.[3]  *See also* Mot. at 5-6.  Indeed, Plaintiffs' list of the "number of ways" the trial loan modification applications allowed Wells Fargo to "refuse to offer assistance" (Opp'n at 15) underscores that the applications are ***mere requests*** that Wells Fargo could reject, not a binding contract.[4]

Further obscuring exactly what contract (if any) Plaintiffs rely on for their breach of contract claim, the Opposition asserts that the trial loan modification applications are not "solely" the sources "obligat[ing]" Wells Fargo to offer trial loan modifications to Plaintiffs.  Opp'n at 15.  Rather, Plaintiffs insinuate that they are basing their claim on "federal requirements," including under HAMP and HUD,[5] which provide guidelines for determining Plaintiffs' eligibility for trial loan modifications.  Opp'n at 14.  Any such claim is inappropriate as a matter of law: "It is well established that there is no private cause of action under HAMP" (*Ortega v. Wells Fargo Bank, N.A.*, No. 3:11CV01734, 2012 U.S. Dist. LEXIS 11409, at \*17 (N.D. Ohio Jan. 31, 2012)), nor is there a private right of action regarding "alleged noncompliance with HUD regulations" (*Smith v. AmeriHome Mortg. Corp.*, No. 2:12-cv-556, 2012 U.S. Dist. LEXIS 184094, at \*5 (S.D. Ohio

---

[3] Plaintiffs contest Wells Fargo's Request for Judicial Notice ("RJN") of Plaintiffs' trial loan modification applications.  Opp'n at 13-14.  However, not only do Plaintiffs "reference[] [and] rely upon [them] in Plaintiffs' Complaint" (*contra id.*), Plaintiffs consistently refer to them throughout their Opposition, which emphasizes the centrality of these documents to Plaintiffs' allegations and their appropriateness for judicial notice.  *See* Opp'n at 15-17, 20; *see also* Wells Fargo's Reply in Support of Request for Judicial Notice ("Reply RJN"), filed contemporaneously herewith.

[4] Additionally, Plaintiffs claim—with no legal support—that the "amount, interest rate, and length of the particular [trial loan modification] … are not essential terms to that Form Contract" (Opp'n at 14), but it is well-settled that "the essential terms of a contract include … consideration, a quantity term, and a price term" (*Knoop v. Orthopaedic Consultants of Cincinnati, Inc.*, 2008-Ohio-3892, ¶ 14 (12th Dist. 2008)), which clearly encompass those key terms that Plaintiffs concede are not present in the trial loan modification applications.  Opp'n at 14.

[5] "HAMP" refers to the Home Affordable Modification Program, and "HUD" refers to the U.S. Department of Housing and Urban Development.

Nov. 26, 2012)).  Further, Plaintiffs cannot "merely restate or redress their [HAMP or HUD] claim" as a private breach of contract action.  *See Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 U.S. Dist. LEXIS 137769, at *24 (E.D. Mich. Sept. 25, 2012).

Thus, Plaintiffs cannot conveniently re-label the purported contract "implied-in-fact," or rely on federal regulations, to circumvent their requirement to plead a meeting of the minds, which they do not—and cannot—plead here.

### B.      The Complaint Does Not Allege Consideration or Mutuality of Obligation.

The Complaint does not provide a single factual allegation to support that there was consideration for entering into the supposed contract,[6] *i.e.,* that Wells Fargo's alleged agreement "to offer Plaintiffs . . . the best temporary payment plan or modification program for which they were eligible" (Compl. ¶ 170) after receiving Plaintiffs' loan modification applications resulted in any "benefit flowing to [Wells Fargo] in exchange for [its] promise." *Prendergast v. Shoeberger*, 154 Ohio App. 3d 162, 168 (8th Dist. 2003).  The only allegations of any "benefit" to Wells Fargo in the Complaint relate to a supposed benefit for Wells Fargo's alleged participation in the federal government's programs (*see* Compl. ¶ 63 ("Defendant receives incentive payments for every successful modification *under the Program Documentation*")), which is not a "benefit" to Wells Fargo provided by Plaintiffs.  Further, Plaintiffs' conclusory statement that the "certifications, promises, agreements, and consents" they provided resulted in a "benefit [that] flowed to Wells Fargo" (Opp'n at 17) fails to address their issue, as Plaintiffs do not point to a single paragraph in the Complaint that supports that argument.  *See* Opp'n at 16-17, 20-21.

---

[6] Plaintiffs allege without specificity that, "[i]n consideration," Wells Fargo "agreed via the Form Contract to evaluate" Plaintiffs "for temporary payment plan[s] or modification program[s] in compliance with GSE, HUD, and HAMP requirements."  Compl. ¶ 170.

Plaintiffs also argue that they incurred a "legal detriment" by (i) certifying that the information Plaintiffs provided in connection with their trial loan modification applications was truthful; (ii) authorizing Wells Fargo to obtain a credit report; (iii) acknowledging that Wells Fargo may still pursue foreclosure in case of Plaintiffs' fraud or misrepresentation in their applications; and (iv) acknowledging that "any resulting [trial loan modification] would not compromise Wells Fargo's ability to foreclose." *See* Opp'n at 17. But even if Plaintiffs provided "[a]ll of these certifications, promises, agreements, and consents" (Opp'n at 17), the supposed agreement between the parties still lacks consideration, as Plaintiffs fail to allege facts showing those acts provided a "benefit to the promisor." *See Orwell Natural Gas Co., Inc. v. Fredon Corp.*, 2015 Ohio 1212, ¶ 45 (11th Dist. 2015). Without adequately alleging what benefit inured to Wells Fargo under the purported contract, Plaintiffs, at best, have only alleged a "gratuitous promise," which is "not enforceable as a contract." *Id*. at ¶ 44.

Furthermore, Plaintiffs fail to allege that Wells Fargo exchanged any promise *in return* for the supposed "legal detriment" that they incurred by submitting their applications (Opp'n at 17). In fact, each and every time Plaintiffs argue that Wells Fargo "agreed" to offer Plaintiffs "the best temporary payment plan or modification program for which they were eligible" (*see, e.g.,* Opp'n at 10-11, 14, 15, 19, 20), Plaintiffs cite *only* their own unsupported statement in the Complaint that baldly states the same. Compl. ¶ 170; *see also* Compl. ¶ 60. Plaintiffs do not, and cannot, quote anything in the alleged contracts—the applications for a loan modification—or, apparently, language from any other source, to support that Wells Fargo promised to make Plaintiffs that offer. *See* RJN Exs. C-D.

Similarly, Plaintiffs' alleged contract also lacks mutuality of obligation, which requires that "both parties to the contract must be bound or neither is bound." *See, e.g., Stepp v. NCR Corp*.,

494 F. Supp. 2d 826, 834 (S.D. Ohio 2004).  Plaintiffs' argument that Wells Fargo expected Plaintiffs "to be bound by the[] terms" of the applications merely because they submitted an application for a loan modification (Opp'n at 20) is a red herring.  The applications demonstrate, and Plaintiffs' own pleading supports, that Plaintiffs were not bound to remain in any portion of the application process, much less to accept any proffered trial modification.  *See* RJN Exs. C, D. Not surprisingly, the Complaint contains no such allegation.  *See generally* Compl.  And, despite Plaintiffs' claim that the applications' "Acknowledgment and Agreement" section "memorializes" Plaintiffs' promises, that provision—on its face—merely demonstrates that Plaintiffs understood they were applying for the opportunity to obtain a loan modification—not that they would be forced to take any one offered and comply with its terms.  *Compare id*. *with* RJN Ex. C at 4 (specifying only that "Plaintiffs mak[e] this request for consideration under the Making Home Affordable Program"), RJN Ex. D at 4-5 ("I [] understand that I [] will be considered for all mortgage assistance options available to us").  Further, nowhere in the "Acknowledgement and Agreement" is there any mention of a contractual obligation binding *Wells Fargo*.

Having thus failed to proffer facts supporting the required elements of consideration and mutuality of obligation, Plaintiffs' breach of contract claim should be dismissed.

### C.    The Alleged Contracts Do Not Satisfy the Statute of Frauds.

Plaintiffs argue that their alleged contracts are "much too tenuously connected" to their residential property to implicate the Statute of Frauds.  *See* Opp'n at 19; Compl. ¶¶ 114, 128.  Ohio law is to the contrary.

Judge Economus recently dismissed a case brought by plaintiffs who alleged, as do Plaintiffs here, that defendant loan servicer "promised that they would be approved for a [residential mortgage] loan modification."  *McCubbins v. BAC Home Loans Servicing, L.P.*, No.

2:11-cv-547, 2012 U.S. Dist. LEXIS 5620, at *6 (S.D. Ohio Jan. 18, 2012). The court held their promissory estoppel claim to be unenforceable under the Statute of Frauds, explaining that "the promised loan modification . . . falls within the plain meaning" of the Statute, because a "loan modification . . . falls within the statutory definition of a loan agreement."[7] *Id.* at *7-8 (citing O.R.C. § 1335.02). Courts applying Ohio law so hold. *See In re Mocella*, No. 10-42287, 2016 Bankr. LEXIS 2477, at *42-43 (Bankr. N.D. Ohio June 17, 2016).

In *Mocella,* Debtors argued that a residential mortgage loan modification offer "was not a contract concerning real property." *Id.* at *32. The court, however, concluded that—"consistent with the great majority of [Ohio] courts to have addressed this issue"—an offer to modify a mortgage loan is, by definition, subject to Ohio's Statute of Frauds: "[T]he Loan Modification Offer is a 'loan agreement' as defined in O.R.C. § 1335.02(A)(3). In order for the Debtors to bring an action pursuant to the Loan Modification Offer, the agreement needed to be in writing and signed by [the lender] or its representative." *Id.* at *42-43; *see also Hammond v. Citibank, N.A.*, No. 2:10-CV-1071, 2012 U.S. Dist. LEXIS 129671, at *21-22 (S.D. Ohio Sep. 12, 2012) (a "promise to modify" a mortgage loan falls within the purview of Section 1335.02, and is therefore unenforceable if not written and signed in compliance with the Statute of Frauds); *Fifth Third Mortg. Co. v. Bell*, 2013-Ohio-3678, ¶ 54 (12th Dist. 2013) ("This court has recently reiterated that because a modification of a mortgage, involves a transfer of realty interests, the statute of

---

[7] Section 1335.02(A)(3) defines loan agreement to mean: "one or more promises, promissory notes, agreements undertakings, security agreements, mortgages, or other documents or commitments, or any combination of these documents or commitments, pursuant to which a financial institution loans or delays, or agrees to loan or delay, repayment of money, goods, or anything of value, or otherwise extends credit or makes a financial accommodation."

Section 1335.02(B) provides that "[n]o party to a loan agreement may bring an action on a loan agreement unless the agreement is in writing and is signed by the party against whom the action is brought or by the authorized representative of the party against whom the action is brought."

frauds would apply."). The sole authority the Opposition cites in the mortgage loan context to argue that Plaintiffs' oral agreement was too tenuously related to land to fall within the Statute of Frauds (Opp'n at 19) was overturned on this very point, in light of intervening Ohio Supreme Court precedent also cited in the Opposition, *FirstMerit Bank v. Inks*. *See Fifth Third Mortg. Co. v. Perry*, 2016-Ohio-7811, ¶ 36 (4th Dist. 2016) ("The alleged oral modification in the present matter involves the terms upon which the [bank] entities allegedly agreed to modify the terms, timing, and mode of payment due under the mortgage. Accordingly, and pursuant to *Inks*, the Statute of Frauds renders the oral modification to the mortgage unenforceable; and summary judgment in favor of the [bank] entities was appropriate."); *accord JP Morgan Chase Bank, N.A. v. Spears*, 2018-Ohio-917, ¶ 22 (3d Dist. 2018) ("[T]he authority in *Inks* and *Perry* clearly hold that the statute of frauds bars enforcement of such an agreement."). Plaintiffs' alleged contracts regarding Wells Fargo's purported obligation to modify their mortgage loans are likewise subject to, and deficient under, Ohio's Statute of Frauds.[8]

The Opposition also argues that the Statute of Frauds does not apply because Wells Fargo was "merely a servicer" of their mortgage loans, and not the actual owner. Opp'n at 19. But this is a distinction without a difference: as the very provision Plaintiffs rely on provides, the Statute of Frauds requires the signature of either the owner, "or his agent thereunto lawfully authorized." Opp'n at 18 (citing O.C.R. § 1335.04). And, "a mortgage's loan servicer acts as agent for the mortgagee." *Kimball v. Orlans Assocs.*, 651 F. App'x 477, 481 (6th Cir. 2016). Given that it is

---

[8] Plaintiffs' argument that the Statute of Frauds does not apply because Ohio follows the title theory of mortgage law does not stand to reason. Opp'n at 19. To the contrary, "jurisdictions [that] subscribe to the 'title theory' of mortgages, under which a mortgage or deed of trust actually conveys an interest in the real property . . . [hold] that an agreement to make or modify a loan secured by a mortgage or deed of trust falls within the statute of frauds." *Quintana v. First Nat'l Bank*, Nos. 94-2073, 94-2128, 1995 U.S. App. LEXIS 22567, at *14-15 (10th Cir. Aug. 16, 1995); *see also McCubbins*, 2012 U.S. Dist. LEXIS 5620, at *6.

undisputed that the alleged contracts were not signed by Wells Fargo (Mot. at 8; Opp'n at 18-19), their unenforceability under the Statute of Frauds provides an independent reason the breach of contract claim should be dismissed.

## II. Plaintiffs Fail to State a Claim for Fraudulent Concealment (Count II).

### A. Plaintiffs' Fraudulent Concealment Claim Fails for Lack of Legal Duty.

Plaintiffs do not dispute that, in Ohio, the traditional relationship between debtor and creditor is understood to be one of arm's length transactions, with no duty to disclose, unless an exception applies. *See Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 450 (6th Cir. 2012); *cf. 425 Beecher, LLC v. Unizan Bank*, 2010-Ohio-412, ¶ 52 (10th Dist. 2010). Through the Opposition, however, Plaintiffs seek to exempt themselves from that traditional relationship and establish a duty to disclose by asserting that they had a "relationship of special trust and confidence" with Wells Fargo. *See, e.g.*, Opp'n at 23 (citing *Umbaugh Pole Building Co. v. Scott*, 390 N.E.2d 320, 323 (1979)).[9] Plaintiffs base this relationship on assertions that the alleged contract "imposed obligations upon each Plaintiff[] far exceeding the obligations of a traditional loan application" and that Wells Fargo had the "sole means with which to examine each Plaintiff's eligibility." *Id*. at 23-24.

Notwithstanding that consenting to the submission of information to those who would finance and service a desired loan is not unusual or excessive, *contra* Opp'n at 23, the allegation that the parties shared a relationship of special trust or confidence is nowhere to be found in the

---

[9] Plaintiffs require this relationship to avail themselves of the argument that "full disclosure may also be required of a party to a business transaction 'where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts.'" Opp'n at 22 (citing *Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 101 (1988)). The *Blon* Supreme Court itself reversed the appellate court and reinstated judgment for the bank defendant on a fraud claim where the appellate court had improperly found a relationship of special trust and confidence between the bank and individual borrowers. *Id*. at 102.

Complaint. *See generally* Compl. It is axiomatic that Plaintiffs cannot use their opposition memorandum as a vehicle to augment their deficient claims against Wells Fargo. *See Bond v. Antero Res. Corp.*, No. 2:17-cv-14, 2018 U.S. Dist. LEXIS 108219, at *10 (S.D. Ohio June 28, 2018); *Bainum v. Bakery*, No. 1:03-cv-926, 2007 U.S. Dist. LEXIS 98799, at *46 (S.D. Ohio Feb. 23, 2007).

Plaintiffs are unable to invoke the "special trust" exception for the additional reason that they fail to allege that "*both* parties understood" a special trust or confidence had been reposed in Wells Fargo. *Umbaugh*, 390 N.E.2d at 323 (emphasis added); *see also Cedar View, Ltd. v. Colpetzer*, No. 5:05-CV-00782, 2006 U.S. Dist. LEXIS 7018, at *9 (N.D. Ohio Feb. 24, 2006) ("An assumption by one party that a fiduciary duty exists does not fulfill the Ohio Supreme Court's requirement that both parties must understand that a special trust or confidence has been reposed."). Plaintiffs have made no factual allegation to suggest that Wells Fargo understood a special trust or confidence characterized Plaintiffs' transactions with the Bank. Indeed, even in the Opposition's two-page discussion of the alleged relationship, Plaintiffs fail to cite—even once—an allegation in their Complaint in support of this mutually understood dynamic. *See* Opp'n at 23-24. Thus, even if Plaintiffs had otherwise made valid arguments regarding the elements of fraudulent concealment in their Opposition (they have not), their fraudulent concealment claim would still fail because they may not amend their pleading failures through an opposition memorandum. *See Bond*, 2018 U.S. Dist. LEXIS 108219, at *10; *Bainum*, 2007 U.S. Dist. LEXIS 98799, at *46.

Neither the Complaint nor the Opposition can establish that Plaintiffs should be excepted from the traditional lender-borrower relationship in this case. Plaintiffs accordingly have not pled that Wells Fargo had a duty to disclose, and their fraudulent concealment claim fails.

**B.      The Complaint Fails to Plead Facts Showing Knowledge of Concealment.**

The Opposition ignores Wells Fargo's argument that Plaintiffs' own allegations preclude the "knowledge" element of fraudulent concealment.  *See* Mot. at 11.  The Opposition's silence alone concedes the issue.  *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784 n.4 (S.D. Ohio 2009) ("Plaintiff does not address this argument in his memorandum in opposition," and therefore "impliedly concede[s] that [the challenged claim] is not viable.").

As the Motion pointed out, Plaintiffs' own Complaint describes that the Bank did not know that the calculation error resulted in erroneous trial modification denials prior to 2018, when it disclosed the error.  Compl. ¶¶ 29, 89.  By acknowledging that Wells Fargo was not aware until 2018 that any trial modification decisions, let alone particular decisions for these Plaintiffs, had been affected by the calculation error, the allegations of the Complaint preclude a concealment claim.  *See* Mot. at 11 (citing Compl. ¶¶ 29, 89); *see also NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 457-58 (6th Cir. 2007).

The Opposition suggests that Plaintiffs' allegations regarding the date by which Wells Fargo became aware of the calculation error itself are sufficient to sustain their fraudulent concealment claim.  *See* Compl. ¶¶ 85, 97 (Wells Fargo knew of the error by 2015); Compl. ¶¶ 17, 85 (Wells Fargo knew of the error by 2013).  But knowledge of the calculation error alone is not what is relevant.  Instead, fraudulent concealment requires knowledge of a "material fact," which is only one that is "likely to have affected the conduct of a reasonable person."  Mot. at 10 (citing *Li-Conrad v. Curran*, 2016-Ohio-1496, ¶ 36 (11th Dist. 2016)); *see also Yahner v. Kerlin*, 2003-Ohio-3967, ¶ 19 (8th Dist. 2003); *Leal v. Holtvogt*, 123 Ohio App. 3d 51, 76 (2d Dist. 1998).  The Complaint does not and cannot allege that a reasonable person, including Plaintiffs, would have altered their conduct in response to knowing about a calculation error that had no known impact

on trial modification decisions. Stated another way, in the absence of knowing the error impacted actual modification decisions, Plaintiffs cannot plead they would have acted differently. Without such an allegation, the knowledge element is lacking and the Complaint fails to state a claim for fraudulent concealment.

### C.     Plaintiffs Fail to Plausibly Allege an Intent to Mislead.

The Complaint does not plead facts, as it must, to support an inference that Wells Fargo intended to mislead Plaintiffs with a "purpose" or by "design." *See Minaya v. NVR, Inc.*, 2017-Ohio-9019, ¶ 15 (8th Dist. 2017); *Klott v. Assocs. Real Estate*, 41 Ohio App. 2d 118, 121-22 (10th Dist. 1974). Absent facts to support that inference, the Complaint cannot state a claim for fraudulent concealment under Ohio law. *See Klott*, 41 Ohio App. 2d at 121-122. The Opposition's only response is to recite a single conclusory allegation that merely parrots the words of the claim's elements. *See* Opp'n at 28 (citing Compl. ¶ 183) ("by wrongfully communicating to Plaintiffs and . . . by actively concealing . . . Defendant intended to provoke reliance . . . on Defendant's misrepresentations and omissions"). These unsupported allegations are insufficient to state an intent to mislead under Rule 9(b) and Rule 12(b)(6). *See Miller v. First Safety Bank*, No. 1:14-CV-368, 2014 WL 12586315, at *5 (S.D. Ohio Dec. 30, 2014); *Minaya*, 2017-Ohio-9019, ¶ 15 (affirming dismissal at pleadings stage where plaintiffs "did not rely on specific facts to support their cause of action for fraudulent concealment").

Plaintiffs' acknowledgement that Wells Fargo was not aware the calculation error had impacted any borrower until 2018 further undermines their intent to mislead allegation. *See* Compl. ¶ 29; *supra* Section II.B. Under the Complaint's own allegations, Wells Fargo could not

have *intended* to mislead these Plaintiffs or any other borrowers prior to 2018.[10] Moreover, Plaintiffs' Complaint is imbued with other allegations consistent with error but not an intent to mislead, including that the error was "automated" (*e.g.* Compl. ¶ 73), the denials were the result of "errors" (*e.g.* Compl. ¶ 76), and that Wells Fargo admitted its "mistake" (Compl. Exs. A, B). "One cannot infer intent to commit fraud based solely on the assertion that errors allegedly committed" were numerous or egregious." *Minaya*, 2017-Ohio-9019, ¶ 15.

The Opposition cites *Hernandez v. Wells Fargo, N.A.* in an effort to bolster the argument that the Complaint sufficiently alleged this intent. Opp'n at 28-29 (citing No. 3:18-CV-07354-WHA, 2019 U.S. Dist. LEXIS 93529, at *18 (N.D. Cal. June 3, 2019)). But the *Hernandez* opinion the Opposition cites did not address *any* fraud claim, in the context of an "intent to mislead" or otherwise. *See generally Hernandez,* 2019 U.S. Dist. LEXIS 93529. Rather, Plaintiffs cherry-pick language from the California court's discussion of an intentional infliction of emotional distress claim, under California law, and present it to this Court as an "allegation[]" "sufficient . . . to show an intention to mislead." *Id*. at 28. When the *Hernandez* court subsequently *did* consider whether to grant leave to add a fraudulent concealment claim (in an entirely separate order), it rejected the proposed amendment as futile, finding plaintiffs could not allege the "necessary intent to give rise to a duty [to disclose], especially because [Wells Fargo] was acting in its conventional role as a money lender." No. 3:18-CV-07354-WHA, 2019 U.S. Dist. LEXIS 140370, at *12 (N.D. Cal. Aug. 19, 2019) (denying leave to amend).

---

[10] To the extent Plaintiffs' allegations and arguments concern conduct directed at government regulators and the general public (*e.g.* Compl. ¶¶ 183, 187; Opp'n at 28), they cannot support a fraud-based claim against Wells Fargo by Plaintiffs. *See Lisboa v. Tramer*, 2012-Ohio-1549, ¶ 32 (8th Dist. 2012) ("A party is unable to maintain an action for fraud where the fraudulent representations were not made directly to him to induce him to act on them in matters affecting his own interests.").

Because the Complaint fails to plausibly allege Wells Fargo had an intent to mislead, the fraudulent concealment claim should be dismissed.

## III.     Plaintiffs Fail to State an IIED Claim (Count III).

In Ohio, "[t]he bar for an IIED claim is extremely high." *Graves v. Starbucks Coffee Co./Starbucks Corp.*, No. 1:15-cv-431, 2016 U.S. Dist. LEXIS 111484, at *39 (S.D. Ohio Aug. 22, 2016). The Complaint does not meet this high standard, as Plaintiffs' allegations of emotional distress are insufficiently "severe and debilitating." *Cf. Rhoades v. Chase Bank*, 2010-Ohio-6537, ¶ 21 (10th Dist. 2010) (affirming dismissal of IIED claim). The Complaint asserts the same threadbare allegations of "stress and anxiety" and "mental anguish" (Compl ¶¶ 120, 123, 144, 149), which do not approach the fulsome description of severe and debilitating emotional distress that is required under Ohio law or federal pleading standards. *See Swartz v. Carlo*, No. 1:12CV3112, 2015 WL 1022073, at *5 (N.D. Ohio Mar. 6, 2015); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Mot. at 16-17. The fact that the Complaint contains the same *identical* boilerplate allegations for both Hawkins (Compl. ¶¶ 120, 123) and Ryder (Compl. ¶¶ 144, 149) only confirms their inadequacy.[11] *See Swartz*, 2015 WL 1022073, at *5 ("Allegations that [multiple] Plaintiffs suffered the same severe emotional distress without some distinguishing factual allegations are by definition, conclusory, and are insufficient to state a claim."). Plaintiffs provide no response to this argument, other than requesting leave to amend. Since the Opposition parrots the Complaint's existing allegations, this request would be futile.

---

[11] Perhaps recognizing this, Plaintiffs resort to the straw man argument that their claim survives because they are not required to allege that they received treatment for a medical condition, an argument Wells Fargo does not make. Opp'n at 30 (citing *Earnest v. Citi Prop. Holdings*, 2012 Ohio Misc. LEXIS 5277, at *14 (Frank. Co. Comm. Pleas. Nov. 2, 2012)).

Plaintiffs also do not contest that Ohio law has a narrow definition of extreme and outrageous conduct. Opp'n at 30; Mot. at 13-16. And they fail to address, let alone distinguish, Wells Fargo's legal authorities demonstrating that neither concealment nor the failure to offer loan mitigation options can approach Ohio's exceedingly high threshold for a finding of IIED. Mot. at 13-16; *cf. Dooley v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 862, 864, 868-69 (S.D. Ohio 2013) (not even a series of intentional and untrue misrepresentations regarding plaintiffs' eligibility for a loan modification can "come close to meeting Ohio's narrow definition of 'extreme and outrageous' conduct"); *Estate of Ciotto v. Hinkle*, 2019-Ohio-3809, ¶ 87 (6th Dist. 2019) ("concealment of the murder weapon and lies . . . do not rise to the level of outrageous conduct").

Yet without addressing these legal authorities to the contrary, Plaintiffs contend that "there is little precedential case law to inform [t]his Court's analysis" because *Yeager v. Local Union 20*—a thirty-six-year-old opinion—was "only recently" decided. 453 N.E.2d 666, 669 (1983). This premise is used to support Plaintiffs' final request: that this Court create new Ohio IIED precedent in their favor by relying on a California decision "interpreting California law"—because, otherwise, no legal basis for their claim exists. *See* Opp'n at 30.

But Plaintiffs do not present the Court with an issue of first impression. Plaintiffs' request would require this Court to lower Ohio's extremely high bar for outrageous conduct and ignore the jurisprudential distinctions between California and Ohio IIED law.[12] While a mismanaged

---

[12] Although Plaintiffs urge that the elements of IIED in both states are "substantially similar," Opp'n at 31, the relevant inquiry is how those elements have been interpreted and applied by the courts of each state. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 568–69 (1987) ("For example, while most States now recognize a tort of intentional infliction of emotional distress, they vary in the degree of intent required to establish liability, [] the level of physical manifestation of the emotional injury required to support recovery[, and whether it is appropriate for a court to] consider the context and the relationship between the parties" in determining whether plaintiff has alleged outrageous conduct.). To conflate these states' distinct bodies of precedent would be unjust and inappropriate. *See id.* ("broad pronouncements in this area may

loan modification process might, in some instances, constitute extreme and outrageous conduct under California law, that is simply not Ohio law. *Compare Martinez v. Flagstar Bank, FSB*, No. 2:15-cv-01934-KJM-CKD, 2016 U.S. Dist. LEXIS 94124, at *24-25 (E.D. Cal. July 18, 2016) *with Provident Bank v. Adriatic, Inc.,* 2005-Ohio-5774, ¶ 25 (12th Dist. 2005). As the Complaint fails to allege "extremely atrocious and outrageous behavior" under *Ohio* law, their IIED claim cannot survive. *Martin v. City of Broadview Heights*, No. 1:08 CV 2165, 2011 U.S. Dist. LEXIS 92466, at *51 (N.D. Ohio Aug. 18, 2011) (citing *Bolander v. BP Oil Co.*, 128 F. App'x 412, 419 (6th Cir. 2005)) (In Ohio, "a *prima facie* claim of intentional infliction of emotional distress is extremely difficult to show.").

Given the foregoing, Plaintiffs fail to state a claim for intentional infliction of emotional distress.

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted,

/s/Scott A. King
Scott A. King (0037582)
THOMPSON HINE LLP
Austin Landing I
10050 Innovation Drive, Suite 400
Miamisburg, OH 45342-4934
Telephone: 937.443.6854
Facsimile: 937.443.6635
Scott.King@ThompsonHine.com

and

---

have to bow to the precise application of [each state's] developing legal principles to the particular facts at hand"); *cf. Hayslip v. Genuine Parts Co.*, No. 2:17-cv-584, 2019 U.S. Dist. LEXIS 193139, at *16 n.7 (S.D. Ohio Nov. 6, 2019) ("Ohio choice of law rules provide that the law of the jurisdiction where the [tort] occurred govern unless some other state has a more significant interest in the outcome of the case.").

Amanda L. Groves (*Admitted pro hac vice*)
Kobi Kennedy Brinson (*Admitted pro hac vice*)
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: 704.350.7747
Facsimile: 704.350.7800
agroves@winston.com
kbrinson@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Brian Flick
Daniel M. Solar
Marc E. Dann
The Dann Law Firm Co., LPA
P.O. Box 6031040
Cleveland, Ohio 44103

Clay M. Gatens
Devon A. Gray
Jeffers, Danielson, Sonn & Aylward, P.S.
2600 Chester Kimm Road
P.O. Box 1688
Wenatchee, WA 98807

/s/Scott A. King
Scott A. King