# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **ETHAN RYDER et al.,** <br> *on behalf of themselves and all others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> **WELLS FARGO BANK, N.A.** <br><br> Defendant. | Case No.1:19-CV-638 <br><br> Judge Timothy S. Black <br><br> Magistrate Judge Karen L. Litkovitz |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs and Class Representatives Ethan Ryder, James Chambers, Maureen Mann, Viola Thomas, Kimberly Duncan, Jose Aguilar and Elizabeth Manley ("Class Representatives" or "Named Plaintiffs"),[1] on behalf of themselves and the Settlement Class, by and through their undersigned counsel, respectfully move this Court pursuant to Federal Rule of Civil Procedure 23(e) to enter the attached proposed Order Granting Final Approval of Class Action Settlement ("Final Approval Order").

The proposed Final Approval Order does the following:

(1)      finds that the Agreement to settle this Action between the Parties is "fair, reasonable, and adequate" pursuant to Rule 23(e);

(2)      finds that the notice of the Settlement to the Class satisfies due process and Rule 23; and

(3)      approves the Allocation Plan.

---

[1] Capitalized terms not defined herein are as stated in the Stipulation of Class Action Settlement (Doc. 44-1).

This motion is based on the supporting memorandum, the declaration of Marc Dann (**<u>Exhibit 1</u>**), the declaration of Ryan Bahry (JND Legal Administration) (**<u>Exhibit 2</u>**), the pleadings and papers filed in this Action, and such other matters as the Court may consider.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

TABLE OF CONTENTS

I.     Introduction .................................................................................................... 1

II.    Factual Background and Procedural History ................................................... 4

       A.     Factual and Procedural Background ........................................................4

       B.     Settlement Negotiations and the Settlement .............................................5

       C.     Preliminary Approval and Notice of Settlement ......................................7

              1.   Notice of Settlement .........................................................................7

              2.   Class Action Fairness Act Notice ....................................................8

              3.   Class Counsel's Motion for Fees, Costs and Service Awards .............8

              4.   Objections .........................................................................................9

III.   Legal Standard ................................................................................................ 9

IV.    Argument ........................................................................................................ 11

       A.     The Settlement Was Negotiated at Arm's-Length ...................................11

The Settlement was negotiated at arm's-length with experienced counsel and an independent mediator present. Consistent with Fed. R. Civ. Pro. 23(e)(2)(B), there is no evidence or contention that the Settlement was fraudulent or collusive.

Primary Authorities: *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692 (E.D. Tenn. June 15, 2012), *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001), *Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)

       B.     The Class's Recovery Is Outstanding Given the Risks of Litigation, the
              Method of Distribution, the Proposed Fees, and Lack of Other Agreements..
              12

The substantial, direct cash payments achieved by the Settlement are more than adequate to merit final approval, satisfying Fed. R. Civ. Pro. 23(e)(2)(C).

Primary Authorities: *Chao v. Aurora Loan Services*, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015), *Gaudin v. Saxon Mortg. Servs, Inc.*, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015)

1. The Case Faced Potential Risks ................................................................... 13

This case faced potential risks with protracted litigation, uncertain recovery for Class Members, and opposition from Wells Fargo. These challenges support final approval and satisfy Fed. R. Civ. Pro. 23(e)(2)(C)(i).

Primary Authorities: *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), *Amos v. PPG Indus.*, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015), *Miracle v. Bullitt Cty., Ky.*, 2008 WL 3850477 (W.D. Ky. Aug. 15, 2008)

2. The Method of Distributing Relief is Efficient and Effective ........................ 14

There are no issues regarding the claims process. Class Members are easily identifiable and notice is both efficient and effective, satisfying Fed. R. Civ. Pro. 23(e)(2)(C)(ii).

Primary Authorities: Fed. R. Civ. Pro. 23(e)(2)(C)(ii)

3. The Proposed Fees Are Reasonable ............................................................. 15

Class Counsel's request for attorney's fees is both reasonable and was negotiated after obtaining relief for Class Members, satisfying Fed. R. Civ. Pro. 23(e)(2)(C)(iii).

Primary Authorities: *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148 (S.D. Ohio 1986), *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999), *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010), *Brent v. Midland Funding, LLC*, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011), *Clevenger v. Dillards, Inc.*, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007)

4. There Are No Other Agreements Related to the Settlement ......................... 15

The Parties have not entered into any other agreements related to the Settlement, satisfying Fed. R. Civ. Pro. 23(e)(2)(C)(iv).

Primary Authorities: Fed. R. Civ. Pro. 23(e)(2)(C)(iv)

C.      Absent Class Members Strongly Support the Settlement. .......................... 16

Absent Class Members reacted positively to and support the Settlement. This support demonstrates that the Settlement is fair, reasonable, and adequate.

Primary Authorities: *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), *In re Se. Milk Antitrust Litig.*, 2012 WL 2236692 (E.D. Tenn. June 15, 2012), *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *Office & Prof.'l Emps. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 311 F.R.D. 447 (E.D. Mich. 2015)

1. Only One Objection Out of 1,830 Class Members Indicates the Settlement is Fair, Reasonable, and Adequate........................................ 13

Out of 1,830 Class Members there is only one objection remaining to the Settlement. The objection is improper and should be overruled.

Primary Authorities: *In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D. Ohio 1997), *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *Rosado v. Ebay Inc.*, 2016 WL 3401987 (N.D Cal. June 21, 2016), *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018 (S.D. Cal. 2017)

2. Ten Opt-Out Requests Indicate the Settlement is Fair, Reasonable, and Adequate.........................................................................................14

There are only 10 opt-out requests, indicating that the Settlement is fair, reasonable and adequate.

Primary Authorities: *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

D. Class Counsel and Class Representatives Have Zealously Represented the Class ................................................................................................ 18

Both Class Counsel and Class Representatives have more than adequately represented the Class, satisfying Fed. R. Civ. Pro. 23(e)(2)(A).

Primary Authorities: Fed. R. Civ. Pro. 23(e)(2)(A)

E. The Settlement is in the Public Interest and Supported by Class Counsel and Plaintiffs. ............................................................................... 19

The Settlement is both in the public interest and is resoundingly supported by Class Counsel and Class Representatives.

Primary Authorities: *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), *Harsh v. Kalida Mfg., Inc.*, WL 4145720 (N.D. Ohio Sept. 13, 2021

F. The Allocation and Distribution Plan is Fair, Reasonable, and Adequate ..19

The Allocation Plan and Distribution Plan treat Class Members fairly and pose rational allocations based on relative harms suffered.

Primary Authorities: *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503 (E.D.N.Y. 2003), *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016), *Marro v. New York State Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017, *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193 (D. Kan. 2000)

G.      The Court-Approved Notice Program Satisfied Due Process and Rule 23's Standards. ............................................................................................ 20

The Notice Program satisfied due process, satisfying Fed. R. Civ. Pro. 23(h)(1).

Primary Authorities: *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), *In re Countrywide*, 2009 WL 5184352, *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96 (2d Cir. 2005)

H.      Class Certification for Settlement is Appropriate .................................... 22

The requirements of Fed. R. Civ. Pro. 23(a) and 23(b)(3) are met and support certification of the Settlement.

Primary Authorities: *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), *Chesher v. Neyer*, 215 F.R.D. 544 (S.D. Ohio 2003), *In re Am. Med. Sys. Inc.*, 75 F.3d 1069 (6th Cir. 1996), *Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976), *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013), *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

V.      Conclusion ................................................................................................ 23

TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................................... 21

*Amos v. PPG Indus.*,
  2015 WL 4881459 (S.D. Ohio Aug. 13, 2015)................................... 9, 13

*Bailey v. Verso Corp.*,
  2021 WL 673164 (S.D. Ohio Feb. 22, 2021)......................................... 10

*Bautista v. Twin Lakes Farms, Inc.*,
  2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ...................................... 11

*Bert v. AK Steel Corp.*,
  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)....................................... 11

*Brent v. Midland Funding, LLC*,
  2011 WL 3862363 (N.D. Ohio Sept. 1, 2011)....................................... 15

*Chao v. Aurora Loan Services*,
  2015 WL 294823 (N.D. Cal. Jan. 21, 2015) .......................................... 12

*Chesher v. Neyer*,
  215 F.R.D. 544 (S.D. Ohio 2003)........................................................... 22

*Clevenger v. Dillards, Inc.*,
  2007 WL 764291 (S.D. Ohio Mar. 9, 2007).......................................... 15

*Dillworth v. Case Farms Processing, Inc.*,
  2010 WL 776933 (N.D. Ohio Mar. 8, 2010) .......................................... 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................. 20

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) .................................................................. 20

*Franks v. Kroger Co.*,
  649 F.2d 1216 (6th Cir. 1981) .................................................................. 9

*Gaudin v. Saxon Mortg. Servs, Inc.*,
  2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ...................................... 12

vii

*Harsh v. Kalida Mfg., Inc.,*
  WL 4145720 (N.D. Ohio Sept. 13, 2021) ................................................. 18

*In re Am. Med. Sys. Inc.,*
  75 F.3d 1069 (6th Cir. 1996) .................................................................. 22

*In re Broadwing, Inc. ERISA Litig.,*
  252 F.R.D. 369 (S.D. Ohio 2006) ............................................................ 9

*In re Cardizem CD Antitrust Litig.,*
  218 F.R.D. 508 (E.D. Mich. 2003) ..................................................... 16, 18

*In re Cincinnati Gas & Elec. Co. Sec. Litig.,*
  643 F. Supp. 148 (S.D. Ohio 1986) ........................................................ 15

*In re Countrywide,*
  2009 WL 5184352 ................................................................................ 20

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 330 (N.D. Ohio 2001) .......................................................... 11

*In re S. Ohio Corr. Facility,*
  173 F.R.D. 205 (S.D. Ohio 1997) ........................................................... 16

*In re Se. Milk Antitrust Litig.,*
  2012 WL 2236692 (E.D. Tenn. June 15, 2012) .................................... 11, 15

*In re Visa Check/Mastermoney Antitrust Litig.,*
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................... 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
  722 F.3d 838 (6th Cir. 2013) .................................................................. 22

*Law v. Nat'l Collegiate Athletic Ass'n,*
  108 F. Supp. 2d 1193 (D. Kan. 2000) ...................................................... 19

*Manners v. Am. Gen. Life Ins. Co.,*
  1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) .................................... 15

*Marro v. New York State Teachers' Ret. Sys.,*
  2017 WL 6398014 (6th Cir. Nov. 27, 2017) ........................................... 19

*Miracle v. Bullitt Cty., Ky.,*
  2008 WL 3850477 (W.D. Ky. Aug. 15, 2008) ........................................ 13

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.,*
  315 F.R.D. 226 (E.D. Mich. 2016) .......................................................... 19

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
  292 F. Supp. 3d 1018 (S.D. Cal. 2017) ................................................................. 17

*Office & Prof.'l Emps. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*,
  311 F.R.D. 447 (E.D. Mich. 2015) ......................................................................... 16

*Ostendorf v. Grange Indem. Ins. Co.*,
  2020 WL 5366380 (S.D. Ohio Sept. 8, 2020) ....................................................... 11

*Rosado v. Ebay Inc.*,
  2016 WL 3401987 (N.D Cal. June 21, 2016) ......................................................... 17

*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976) ................................................................................. 22

*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ........................................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................................... 22

*Wal-Mart Stores, Inc. v. Visa USA Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..................................................................................... 21

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ................................................................................. 23

**Statutes**

28 U.S.C. § 1715(b), (d) .............................................................................................. 8

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. 10, 20

Fed. R. Civ. P. 23(a) ............................................................................................ 21, 23

Fed. R. Civ. P. 23(a)(1) .............................................................................................. 21

Fed. R. Civ. P. 23(a)(2) .............................................................................................. 22

Fed. R. Civ. P. 23(a)(3) .............................................................................................. 22

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 22

Fed. R. Civ. P. 23(b)(3) .................................................................................... 21, 22, 23

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................... 20

Fed. R. Civ. P. 23(e) ............................................................................................. 9, 10, 11

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 10

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 12, 13

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................ 13

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................................... 15

Fed. R. Civ. P. 23(e)(3) ........................................................................................... 10, 15

Fed. R. Civ. P. 23(f) ...................................................................................................... 13

Fed. R. Civ. P. 23(h)(1) ................................................................................................. 21

# I.   INTRODUCTION

Class Representatives, individually and on behalf of the Settlement Class (collectively, "Plaintiffs"), respectfully request that the Court grant final approval of the class action Settlement between Plaintiffs and Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank").

In August 2020, this Court noted it would "likely be able to approve the proposed settlement as fair, reasonable, and adequate under Rule 23(e)(2)." Order Granting Preliminary Approval, Doc. 50, PageID #1059. The Court analyzed the various factors supporting that finding, including the monetary relief afforded to class members and the cost, risks, and delay associated with continued litigation. *Id.*

Those same factors plus the overwhelmingly positive reaction from the class now justify final approval of the Settlement. The Settlement is the product of extensive arm's-length negotiations, and is fair, reasonable, and adequate. Under the $12 million Settlement, Class Members will receive monetary relief totaling over $9 million in direct cash payments with no possible reversion. The Parties reached this proposed Settlement after over a year of multi-front litigation, through which they sufficiently understood the strengths and weaknesses of their respective positions. With the assistance of U.S. Magistrate Judge Morton Denlow (Ret.), the Parties engaged in a lengthy and contentious mediation process, including two full days of mediation, resulting in the Settlement.

A major benefit of the Settlement is direct cash payments to the Class without having to submit a claim form to receive compensation. The proposed Settlement and Allocation Plan provides non-reversionary direct cash payments to the approximately 1,830 Class Members. Each will receive between $1,000 and $19,000, depending on specifically negotiated factors relating to their loan status following the Bank's allegedly erroneous loan modification denial with the higher payments being issued to Class Members who lost their home via short sale or

post-service transfer foreclosure. The $12 million settlement amount includes over $9,098,807.00 in cash payments to Class Members, $2,719,093.00 in attorneys' fees to Class Counsel, $43,656.40 in litigation expenses, up to $100,000.00 to JND for settlement administration, and $17,000.00 for Service Awards for the Class Representatives. Wells Fargo has agreed to pay Class Counsel's attorneys' fees, the reimbursement of litigation expenses, JND's settlement administration fees and expenses, and the Class Representative Service Awards separately such that awarding the requested amounts will not subtract from class member compensation.

The Parties have agreed to a robust notice program and a settlement administration process that has provided Class Members sufficient detail about the case and Settlement and will expeditiously provide them with monetary relief. The Class Action Administrator, JND, provided direct mail notice to the most updated, known addresses of Class Members, and if the direct mail was returned as undeliverable, JND undertook industry-tested steps to locate an alternative address and resend the notice, which resulted in the reissuance of roughly 400 notices. Declaration of Ryan Bahry ("Bahry Dec."), at ¶ 8(b). If the Settlement is approved, JND will send checks to Class Members by first class mail and will follow up with any Class Members who do not initially cash their checks. *Id.*, at ¶ 19. There is no reversion of unclaimed Class Member funds; instead, any unclaimed funds will be allocated *cy pres* to NeighborWorks America, a Congressionally-chartered nonprofit organization supporting community development with a nationwide reach, mirroring the composition of the Settlement Class. Settlement Agreement, at V(B), PageID# 812.

The 1,830 Class Members have reacted favorably to the proposed Settlement with only 3 objections (2 of which have been rescinded) and 10 requests to opt-out of the proposed

Settlement. Bahry Dec., at ¶¶ 16, 18. These very low number of objections and opt-outs indicates that the proposed Settlement is fair, reasonable, and adequate and that the Class is resoundingly in favor of the terms of the proposed Settlement. Further, the proposed Settlement compares favorably to other class action settlements for alleged wrongful loan modification denials and provides meaningful relief to Class Members. In sum, the Settlement merits approval under each of the factors set forth in the newly-amended Rule 23(e), as well as those the Sixth Circuit has enumerated.

The following procedural steps remain to bring this litigation to a close:

*First*, the Court should enter a final approval order finding that:

    a) the Settlement is "fair, reasonable and adequate,"

    b) the notice to Class Members complied with Rule 23 and due process, and

    c) the proposed Allocation Plan is "fair, reasonable, and adequate."

*Second*, the Court should enter an order finding that the contemporaneously filed request for attorneys' fees and costs is reasonable and that the Class Representatives should receive Service Awards totaling $17,000 for their exemplary service leading this Action.

*Third*, once Wells Fargo has made all settlement payments, Class Representatives and Wells Fargo will submit for the Court's entry an order dismissing the case.[2]

*Finally*, once the notice period expires and the time period for any appeals expires, Class Representatives and the Class Action Administrator will move the Court to order the disbursement of the remaining Settlement Fund to Plaintiffs as set forth in the Allocation Plan, with a *cy pres* distribution of any funds resulting from uncashed checks or opt outs.

---

[2] The Court will retain continuing jurisdiction to construe and enforce the Agreement. Settlement, XIII.B.7.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual and Procedural Background

The background of this action, and the procedural posture of the several pending cases leading to this settlement, are set forth in Plaintiffs' Preliminary Approval Motion. Therefore, Plaintiffs briefly summarize the procedural and factual history here. From approximately 2010 to 2018, Plaintiffs assert that Wells Fargo erroneously denied loan modifications to 3,000 homeowners due to a calculation "error" within the software it used to process loan modifications. Third Amended Complaint ("TAC"), Doc. 42, PageID# 737, ¶¶ 2-12. Wells Fargo admitted that a calculation error occurred. (*Id.*, PageID# 736-37, ¶¶ 4-7). Wells Fargo discovered the error in 2013 and implemented a partial fix in 2015. (*Id.*, PageID# 748, 750 ¶¶ 59, 68) A related error, however, continued until 2018. (*Id.*, PageID# 753, ¶ 78). That same year, Wells Fargo publicly admitted the error and implemented a fix. (*Id.*)

Following the erroneous loan modification denial, some borrowers lost their homes to foreclosure proceedings commenced by Wells Fargo, some borrowers sold their homes in a short sale, and still others had the servicing rights to their mortgages transferred to other companies (some of whom later experienced foreclosure). Other borrowers were able to obtain subsequent mortgage loan modifications, pay off their mortgages, or otherwise remain active borrowers with Wells Fargo. This case is brought on behalf of the approximately 1,830 homeowners whom Plaintiffs assert were denied modifications because of the error, but whose homes were not sold during a foreclosure initiated by Wells Fargo.[3]

The Bank sent affected homeowners a letter apologizing for the mistake; it also provided compensation, typically between $5,000 and $15,000, or an equivalent or more favorable loan

---

[3] The claims of borrowers subject to the same error but whose homes Wells Fargo sold in foreclosure are being resolved in the class settlement in *Hernandez v. Wells Fargo Bank, N.A.*, Case No. 3:18-cv-7354-WHA (N.D. Cal.).

modification to all of these homeowners. (*See id.*, PageID# 751, ¶¶ 71-74) The letter invited borrowers to mediate legal disputes. (*Id.*, PageID# 751, ¶ 74). Many borrowers pursued mediation but did not feel that Wells Fargo made them whole through the mediation process. Several putative class actions followed Wells Fargo's disclosure, described in Plaintiffs' Preliminary Approval Motion.

**B. Settlement Negotiations and the Settlement**

The history of the parties' settlement negotiations, including the two, extended full-day mediation sessions with Judge Denlow, is set forth in Plaintiffs' Preliminary Approval Motion. In anticipation of those mediation sessions, the Parties submitted detailed mediation statements and engaged in substantive back-and-forth discussions to narrow their positions. On June 3, 2021, the Parties executed the formal Settlement Agreement. Doc. 44-1, Settlement. The Settlement offers meaningful relief to the following Settlement Class:

> All persons, in the United States who between 2010 and 2018 (i) qualified for a home loan modification or repayment plan pursuant to the requirements of government-sponsored enterprises (such as Fannie Mae and Freddie Mac), the Federal Housing Administration (FHA), or the U.S. Department of Treasury's Home Affordable Modification Program (HAMP); (ii) were not offered a home loan modification or repayment plan by Wells Fargo because of excessive attorney's fees being included in the loan modification decisioning process; (iii) whose home Wells Fargo did not sell in foreclosure.; and (iv) are reflected in the Settlement Class List [as defined in the Settlement Agreement].

Doc. 44-1, Settlement, PageID ## 808-09. Excluded from the Settlement Class are: (a) Wells Fargo and its principals, affiliated entities, legal representatives, successors, and assigns; (b) any Person who files a valid, timely Request for Exclusion; (c) federal, state, and local governments (including all agencies and subdivisions thereof); and (d) any Person who settled and released claims at issue in this Action. *Id.*

The Settlement provides a $12 million settlement fund. *Id*., PageID # 809. The $9,098,907 in Class Member payments is non-reversionary and will be paid automatically, without any claims process, and directly to Class Members. *Id*., PageID ## 812, 815, 840. Separately, subject to Court approval, Wells Fargo has agreed to pay $2,719,093 in attorneys' fees and up to $100,000 in administration costs, $43,656.40 in litigation expenses, and $17,000 in Class Representative service awards. ***Id***., PageID # 823.

The Settlement Agreement contains a plan of allocation. *Id*., Appendix A, PageID # 840. The Allocation Plan contemplates fixed settlement payment amounts according to five categories: Short Sale, Service Transfer, Paid in Full, Active, and Subsequent Modification ("Sub-Modification"). The following table describes each category and the payments members of that category would receive under the Allocation Plan.

| Category | Description | Allocation |
|---|---|---|
| Short Sale | Class Member sold his or her property in a short sale. | $19,000 per loan for Short Sale Class Member, in addition to any sums already received separately from Wells Fargo. |
| Service Transfer: Service Transfer—Foreclosed and Service Transfer—Not Foreclosed | Service and management of the Class Member's mortgage and loan were transferred from Wells Fargo to another entity. Some of these Class Members were subsequently foreclosed upon, but are not members of the *Hernandez* Class because their homes were not foreclosed by Wells Fargo. | Service Transfer—Foreclosed: $13,000 per loan for Service Transfer Class Member whose home was subsequently foreclosed upon, though not by Wells Fargo, in addition to any sums already received separately from Wells Fargo. Service Transfer—Not Foreclosed: For Service Transfer Class Members whose properties were not foreclosed upon, the Allocation Plan provides a $5,000 payment per loan in addition to any sums already received separately from Wells Fargo. |
| Paid in Full | Class Members who have paid off their mortgage. | $5,000 per loan for Paid in Full Class Members, in addition to any sums already received separately from Wells Fargo. |
| Active | Class Members who are still actively paying on their mortgages. | $4,000 per loan for Active Class Members, in addition to any sums already received separately from Wells |

| | | Fargo. |
|---|---|---|
| Sub-Modification | Class Members who were initially denied a modification due to Wells Fargo's error, but whose error was subsequently fixed and were provided a modification. | $1,000 per loan for Sub-Modification Class Members, in addition to any sums already received separately from Wells Fargo. |

## C. Preliminary Approval and Notice of Settlement

### 1. Notice of Settlement

On August 17, 2021, the Court granted Plaintiffs' motion for preliminary approval, appointing JND as the Class Action Administrator and setting a schedule for notice. Doc. 50, Order, PageID # 1061-62. JND provided notice as directed by the Court. Bahry Dec., ¶¶ 7-8; Dann Dec., ¶ 12. The Class Notice approved by this Court clearly explained the material aspects of the Settlement, as well as how to opt out of or object to the Settlement. Doc. 44-1, PageID ## 841-50.

*Direct Mail.* On October 15, 2021, JND used all available data and appropriate tools to provide notice to all members of the Class. Bahry Dec., ¶ 7. JND sent notice via first-class mail using updated names and addresses for each Class Member provided by Wells Fargo. Bahry Decl., ¶¶ 5, 7. JND performed a National Change of Address search or search similar databases to obtain a current address. *Id.*, ¶ 6. For Class Members whose notices were returned as undeliverable, JND performed additional searches, updated addresses and promptly resent notices. *Id.* JND updated its database with any notices that were forwarded by the post office to addresses that have recently changed. Class Counsel anticipates that they will need to assist JND in following up with Class Members to encourage Class Members to cash and/or deposit their settlement payments.

***Website & Telephone***. The website designated for this Settlement is www.ryderwfsettlement.com. The website includes information about the case, including the deadline to object, the date, time and location of the Final Approval Hearing, a set of frequently asked questions with responses, as well as access to the Notice, the proposed Allocation Plan, and the Complaint. Bahry Dec., ¶¶ 10-12. Class Action Administrator JND also established a telephone hotline. *Id*.

As of December 30, 2021, the settlement website was accessed 715 times by 191 individuals. *Id*., ¶ 11. Also, as of December 30, 2021 JND has fielded 105 calls. *Id*., ¶ 14.

### 2.      Class Action Fairness Act Notice

The Class Action Fairness Act ("CAFA") requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official." 28 U.S.C. § 1715(b), (d). JND provided notice on behalf of Wells Fargo on August 6, 2021, within the statutory period. Bahry Dec., ¶ 3. No attorneys general or officials have submitted statements of interest or objections. *Id*., ¶ 4.

### 3.      Class Counsel's Motion for Fees, Costs and Service Awards

Contemporaneously with this filing, Class Counsel have moved for an award of attorney's fees, costs, and Class Representative Service Awards. Class Counsel requested a fee award of $2,719,093.00, and costs of $43,656.40 incurred while pursuing the Action. The motion also seeks Service Awards of $17,000.00. The motion and accompanying papers will be posted to the Settlement Website within two business days of filing. Bahry Dec., ¶ 12. The attorneys' fees, expenses, settlement administration fees and expenses, and Class Representative Service

Awards will be paid directly by Wells Fargo and will not subtract from the over $9 million Class Members receive.

### 4. Objections

Class Members had until November 29, 2021, which is 45 days from the date of initial mailing of the Notice on October 15, 2021 to opt out of or object to the Settlement. Doc. 41-1, Settlement, PageID # 818-819. The Notice directed Class Members to submit opt-out requests to JND. Ten Class Members requested to opt out, and these opt out requests were promptly forwarded to the Parties. Bahry Dec., ¶ 16. The Notice also instructed Class Members who wished to object to the Settlement to submit their objections to the Court and to counsel for the Parties in this case, with certain accompanying information. Doc. 41-1, Settlement, PageID # 818-819. Only three objections were received with two of them being rescinded. Bahry Dec., ¶ 18. The remaining objection generally complains that the individual settlement payment is too low, but does not challenge the settlement as a whole. Doc. 51, Dumas Objection, PageID # 1067. The remaining objector, Ms. Dumas, did not request to opt-out of the Settlement.

### III. LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Federal Rule of Civil Procedure ("Rule") 23(e) provides three steps for the approval of a proposed class action settlement: (1) the court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same). The Court has already granted preliminary approval and the approved notice has taken place. Since then, Class Member reaction to the

Settlement has been positive: one class member objected (.055% of the 1,830 Class Members) and only ten (.55%) opted out. Plaintiffs now request that the Court grant final approval of the Settlement.

Rule 23(e), revised in 2018, instructs that a class action settlement may be approved only if is it "fair, reasonable, and adequate," and after considering whether:

A) the class representatives and class counsel have adequately represented the class;
B) the proposal was negotiated at arm's length;
C) the relief provided for the class is adequate, taking into account:
    i)    the costs, risk and delay of trial and appeal;
    ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii)    the terms of any proposed award of attorney's fees, including timing of payment; and,
    iv)    any agreement required to be identified under Rule 23(e)(3); and,
D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. Pro. 23(e)(2).

Courts within this Circuit also generally consider seven factors when determining whether a settlement is fair, reasonable and adequate. These are:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).[4]

At final approval, courts are not required to "make an affirmative determination of each factor but, rather, should grant final approval if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls

---

[4] The intent of the 2018 revisions was not to displace factors considered by various circuits, but to focus the parties on a shorter list of core concerns. Federal Rule of Civil Procedure 23, Committee Notes regarding 2018 revision.

with the range of possible approval.'" *Bailey v. Verso Corp.*, No. 3:17-CV-332, 2021 WL 673164, at *3 (S.D. Ohio Feb. 22, 2021) (quoting *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-cv-1147, 2020 WL 5366380, at *2 (S.D. Ohio Sept. 8, 2020)); *see also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

## IV.    ARGUMENT

The Settlement merits final approval because it is fair, reasonable, and adequate when judged by the factors set forth in Rule 23(e) and followed in this Circuit.

### A. The Settlement Was Negotiated at Arm's-Length.

Whether the agreement was the product of arm's-length negotiation is a key factor under Rule 23(e)(2)(B), demonstrating the lack of fraud or collusion. *See UAW*, 497 F.3d at 631 (listing this factor). "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *See Milk*, 2013 WL 2155379, at *6.

Here, the Settlement came after contested motion practice and extensive mediation efforts supervised by a highly-respected neutral and former federal judge, U.S. Magistrate Judge Morton Denlow (Ret.). Dann Dec. at ¶¶ 5, 8. Both the presence of experienced counsel and the participation of an experienced independent mediator are factors that strongly support approval of the Settlement. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350-51 (N.D. Ohio 2001) ("Moreover, when the settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."); *Bert v. AK Steel Corp.*, No. 1:02-CV-

11

467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). There is absolutely no evidence, nor any contention, that the Settlement was fraudulent or collusive.

**B.  The Class's Recovery Is Outstanding Given the Risks of Litigation, the Method of Distribution, the Proposed Fees, and Lack of Other Agreements.**

Rule 23(e)(2)(C) directs courts to evaluate whether the "relief provided for the class is adequate" when weighed against several factors. Fed. R. Civ. Pro. 23(e)(2)(C). Here, the substantial, direct cash payments are more than adequate to merit final approval.

The Settlement provides for substantial cash payments—ranging from $1,000.00 to $19,000.00—to the roughly 1,830 Class Members, totaling approximately $9,098,907. These payments will be distributed without a claims process and without reversion. These amounts are in addition to remediation and any mediated amounts Class Members have already received from Wells Fargo. This is an excellent recovery in the context of this Action and should be approved.

The strength of the Settlement's recovery is in part evidenced by comparison to similar settlements involving wrongful loan modifications in the United States. Here, the Settlement recovery for Class Members is substantially higher. *See, e.g., Chao v. Aurora Loan Services*, No. C 10-03118 SBA, 2015 WL 294823 (N.D. Cal. Jan. 21, 2015) (average payment of $1,600 for one class of borrowers and payments of approximately $25 for the remaining borrowers); *Gaudin v. Saxon Mortg. Servs, Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ($4.5 million settlement for class of 2,705 members); *Wigod v. Wells Fargo Bank, N.A.*, No. 1:10-cv-02348 (N.D. Ill.) at Docs. 269, 274, and 277 (each borrower would have received approximately $11,800, less than the minimum payment here for similarly situated Class Members; payments of $250 for those in situations analogous to Class Members here

receiving $1,000 to $5,000). *See* Doc. 274-2 at 17 & Doc. 274 at 6-7 (Motion for Final Approval, Oct. 17, 2014).

The amount of recovery for each Class Member favors final approval, when weighed against the factors set forth in Rule 23(e)(2)(C).

### 1. The Case Faced Potential Risks

Rule 23(e)(2)(C)(i) directs the Court to consider "the costs, risk, and delay of trial and appeal." Similarly, the Sixth Circuit standard considers "the complexity, expense and likely duration of the litigation" and the "likelihood of success on the merits." *UAW*, 497 F.3d at 631.

Like most class actions, this case is complex and has inherent risks. *See Amos*, 2015 WL 4881459, at *1 ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *see also Miracle v. Bullitt Cty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant"). Class Representatives believe their claims against Wells Fargo are meritorious and that the Class would ultimately prevail at trial but recognized that continued litigation against Wells Fargo posed significant risks that made any recovery for the Class uncertain.

To begin with, ongoing litigation would have required extensive discovery as well as contested pre-trial motion practice including class certification, summary judgment and *Daubert* motions. Class certification obviously presents substantial risk; this risk is compounded by the fact that a grant of class certification may be followed by an appeal under Rule 23(f). In all likelihood, the Plaintiffs would have to defend their theories of liability against summary

judgment motions as well. Each stage of the Action would add delay and the risk of non-recovery.

Wells Fargo vigorously contested liability, arguing in part that purported violations of Freddie Mac, Fannie Mae, and/or FHA requirements fail to provide a cause of action in Ohio or elsewhere in the nation. The length of time that has elapsed from the alleged wrongdoing creates challenges for plaintiffs under statutes of limitations for the causes of action alleged in the complaints brought by the Class Representatives and Class Members. Wells Fargo also argued that it did not have a legal duty to disclose loan modification opportunities and that its mistake did not cause economic losses and cannot form the basis for an intentional infliction of emotional distress claim under Ohio law. In short, Wells Fargo would press substantial defenses to liability and damages– and indeed had success on motions to dismiss in cases filed by some Named Plaintiffs and any other unnamed class members here. The costs, risks and potential delay of this complex case supports final approval.

### 2. The Method of Distributing Relief is Efficient and Effective

Rule 23(e)(2)(C)(ii) directs the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Here, there is no issue regarding the claims process, as there is none. The Class Members are identifiable, and they will receive the substantial settlement monies to which they are entitled directly and automatically in the mail. The method of contacting Class Members and distributing this relief, previously discussed (see Section II.C, supra.), is both efficient and effective.

### 3. The Proposed Fees Are Reasonable

Rule 23(e)(2)(C)(iii) directs the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." In their contemporaneously filed motion for fees, costs and service awards Class Counsel seek attorney's fees of $2,719,093, which is less than 25% of the Settlement Fund, as well as litigation expenses of $43,656.40.

The requested fees are on the low end of the range of fees generally awarded for common fund cases within this Circuit. *See, e.g.*, *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) ("typically the percentages range from 20%-50%"); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ. A. 3-98-0266, 1999 WL 33581944, at *29 (M.D. Tenn. Aug. 11, 1999) ("[T]hroughout the Sixth Circuit, attorneys' fees in class actions have ranged from 20%-50%."); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (fee equal to 33% of settlement amount); *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at *19 (N.D. Ohio Sept. 1, 2011) (fee equal to 29% of the settlement amount); *Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, at *1 (S.D. Ohio Mar. 9, 2007) (fee equal to 29% of settlement fund).

Class Counsel's fees were not negotiated until after Class Counsel agreed upon Class Members' relief.

### 4. There Are No Other Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) directs the Court to consider "any agreement required to be identified under Rule 23(e)(3)," which in turn requires "the parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The Parties have not entered into any such agreements apart from the Settlement Agreement. Dann Dec., ¶ 6.

**C. Absent Class Members Strongly Support the Settlement.**

The favorable reaction of Class Members demonstrates that this Settlement is fair, reasonable, and adequate. The "reaction of absent class members" is among the seven factors the Sixth Circuit instructs district courts to consider in evaluating a proposed settlement. *UAW*, 497 F.3d at 631. An "overwhelmingly positive class response highlights the fairness of the settlement to unnamed class members and weighs heavily in favor of approval . . . ." *In re Se. Milk Antitrust Litig.*, No. 2:07-cv-208, 2012 WL 2236692, at *34 (E.D. Tenn. June 15, 2012). Class member reaction is measured by the number of opt-outs and objections—a low number of both favors final approval. *See*, *e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of Class Members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'"); *Office & Prof.'l Emps. Int'l Union v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.* 311 F.R.D. 447, 458 (E.D. Mich. 2015) (objection from "[o]nly one class member" is "extremely minimal level of opposition" and "is an indication of [the] settlement's fairness") (internal quotation marks omitted).

Here, there is only 1 remaining objection and there are just 10 opt-out requests.

**1. Only One Objection Out of 1,830 Class Members Indicates the Settlement is Fair, Reasonable and Adequate**

"[A] relatively small number of class members who object is an indication of a settlement's fairness." *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 214 (S.D. Ohio 1997); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement."). Here, only 1

objection remains out of 1,830 class members (0.055% of Class Members). Sharean Dumas. Doc. 51. Ms. Dumas's objection generally complains that her individual settlement payment is too small given her individual experience with Wells Fargo. *See* Dumas Objection, at PageID# 1067 ("I'm no expert on the exact amount due but it is much more than $1,000 you are offering."). Notably, Ms. Dumas's objection readily admits she has no supporting documentation to prove that she is due another amount higher than she is being offered as a settlement payment in this case. *Id.* ("Rather than provide an itemized list of all of my denials and amounts over the years of your error, I wish to be compensated an additional $75,000.00. I believe this amount to be fair and an elimination of tedious paperwork and labor required to itemize everything."). *Id.*

Courts have concluded that a class member objecting to a settlement because the individual settlement payment amount is too low is an improper basis for objecting because the class member may opt out of the settlement and seek a potentially higher individual recovery. *See, e.g., Rosado v. Ebay Inc.*, No. 5:12-CV-04005, 2016 WL 3401987, at *9 (N.D Cal. June 21, 2016) (noting that "[i]f the objector believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017) (finding an objection unpersuasive, in part, because the class member was free to opt out if he or she knew that the settlement amount was too low). Additionally, objections are also found to be unpersuasive when, as here, the objector has no evidence to support his or her claim that the settlement payment is too low. *Rosado*, 2016 WL 3401987, at *9; *Nunez*, 292 F. Supp. 3d at 1042. The fact that there is only one objection complaining about the settlement payment amount while readily admitting the lack of

documentation to prove a higher payment amount indicates that the objection lacks merit and should be overruled.

### 2. Ten Opt-Out Requests Indicate the Settlement is Fair, Reasonable, and Adequate

Under the Settlement Agreement, the Settlement will become final so long as the Court determines the Settlement is fair, reasonable, and adequate after conducting the Fairness Hearing and less than 10% of the Class opts out. Settlement Agreement, at 29. Here, only 10 of the 1,830 class members requested to opt-out of the Settlement (0.55% of the Class), which is far below the 10% threshold included in the Settlement Agreement. 10 opt-requests is small for 1,830 Class Members and is "indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 527.

### D. Class Counsel and Class Representatives Have Zealously Represented the Class

Rule 23(e)(2)(A) directs courts to consider whether "the class representatives and class counsel have adequately represented the class[.]" The Court is familiar with Class Counsel's and the Class Representatives' zealous advocacy in this case. The case, and the Class, would not exist—and the Class could not expect any recovery, much less over $9 million—if Class Counsel and Class Representatives had not taken on the burden of pursuing the claims on their behalf. This burden was undertaken despite the fact that Wells Fargo had already made payments to many Class Members, and the *Hernandez* case had already resolved claims for those whose homes had been sold by Wells Fargo in foreclosure. Class Representatives vigorously supported Class Counsel's efforts every step of the way. Dann Dec. ¶ 9; Declaration of Ethan Ryder, at ¶ 3 (**Exhibit 3**); Declaration of James Chambers, at ¶ 2 **(Exhibit 4)**; Declaration of Maureen Mann, at ¶ 2 (**Exhibit 5**); Declaration of Viola Thomas, at ¶ 2 (**Exhibit 6**); Declaration of Kimberly

Duncan, at ¶ 2 (**Exhibit 7**); Declaration of Jose Aguilar, at ¶ 2 (**Exhibit 8**); Declaration of Elizabeth Manley, at ¶ 2 (**Exhibit 9**). This supports final approval. Rule 23(e)(2)(A).

**E. The Settlement is in the Public Interest and Supported by Class Counsel and Plaintiffs.**

Two final factors (from *UAW*) merit brief mention and support a finding of fairness.

*First*, the Settlement is in the public interest because it "provides substantial relief to the class members, avoids further litigation in a complex set of cases, and frees the Court of judicial resources." *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021). Plaintiffs have engaged in substantial informal discovery, including confidential and privileged material relating to Class Members, sufficient to fully understand the nature and extent of their claims. *UAW*, 497 F. 3d at 631.

*Second*, and finally, given the comparatively high economic value to Class in light of substantial risks of non-recovery, Class Counsel and the Class Representatives strongly support granting final approval of the Settlement. *Id*; Dann Dec., ¶ 11; Ryder Dec., at ¶ 6; Chambers Dec., at ¶ 4; Mann Dec., at ¶ 4; Thomas Dec., at ¶ 4; Duncan Dec., at ¶ 4; Aguilar Dec., at ¶ 4; Manley Dec., at ¶ 4.

**F. The Allocation and Distribution Plan is Fair, Reasonable, and Adequate**

Plaintiffs' proposed Allocation Plan assures that the Settlement "treats class members equitably relative to each other." FRCP 23(e)(2)(D). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 519 (E.D.N.Y. 2003); *see also New York State Teachers' Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 235 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys*., No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ("The standards applicable to approval of a

settlement also govern the Court's review of a plan of allocation of a settlement fund in a class action."); *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000) ("Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.… As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.").

Plaintiffs submitted the recommended allocation and distribution plan to the Court with their motion for preliminary approval. Doc. 47, Motion. As discussed above and in the Motion for Preliminary Approval, there are rational allocations based on the relative harms suffered. Distribution will be made to Class Members through direct mail. Notably, only 1 class member's objection remains and just 10 submitted a potential opt-out request. The allocation and distribution plan is fair, reasonable, and adequate and should be approved.

### G. The Court-Approved Notice Program Satisfied Due Process and Rule 23's Standards.

A court approving a class action settlement must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Rule P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide*, 2009 WL 5184352, at *12 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

Notice here was the "best notice practicable" and satisfied due process. Class Members received direct notice via mail. Bahry Dec., ¶ 7. That Settlement Notice was disseminated to all

persons who fall within the definition of the Class and whose names and addresses could be identified with reasonable effort from Wells Fargo's records, and through databases tracking nationwide addresses and address changes. *Id*., ¶ 6. Class Members were also directed to the Settlement Website, which includes information regarding the Action including the deadline to object or opt out, and the date and time of the Final Approval Hearing, and (within the next two days) Class Counsel's request for attorney's fees and costs and Service Awards. *Id*., ¶¶ 10-12. A telephone hotline has also been available to answer class member questions. *Id*., ¶¶ 13-14. The Notice Plan and Settlement Notice "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). Of the 1,830 notices initially mailed to Class Members, JND received back 456 undeliverable notices. Bahry Dec., ¶ 8. JND then found updated addresses for 398 of the 456 undeliverable notices. *Id*. at ¶ 8(b). Overall, JND located updated mailing addresses for 1,712 of the 1,830 Class Members (94.7%). *Id*. at ¶ 8. The Class Notice was also posted on the Settlement Website. *Id*. at ¶ 10.

Rule 23(h)(1) also requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Here, the Settlement Notice informed Class Members that Class Counsel would apply to the Court for attorneys' fees of no more than $2,719,093.00, or less than 25% of the fund created by Wells Fargo, plus reimbursement of litigation expenses. That fee request, filed contemporaneously, will be available to all Class Members on the Settlement Website within two business days. Bahry Dec., ¶ 12.

**H. Class Certification for Settlement is Appropriate**

This Court has already preliminarily found that the requirements for certification of a settlement class is appropriate in this Action. Doc. 50, Order; *see Amchem Prods. v. Windsor*, 521 U.S 591, 620 (1997) (supporting certification of settlement classes). Since the time of that Order, nothing has changed that would indicate it should be reconsidered. The requirements of Rule 23(a), as well as Rule 23(b)(3), are met and support the certification that has been granted.[5]

*Numerosity*. There are 1,830 Class Members—more than sufficient to support the requirement of numerosity. Rule 23(a)(1); Bahry Dec., ¶ 5 (noting 1,830 Unique Class Member Records). *See In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement" (internal quotation marks omitted)).

*Commonality*. There are numerous common questions of law and fact—far more than the "single common question" required under Rule 23(a)(2). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). These include: whether Wells Fargo's calculation errors led to the denial of loan modifications to the Class Members; whether the errors were in violation of Wells Fargo's uniform contracts; and whether Class Members were damaged by Wells Fargo's conduct.

*Typicality*. All the Class Representative's claims arise out of the same alleged conduct—Wells Fargo's alleged failure to correct known errors in its modification eligibility software. All of the Class Representative's claims arise out of the same legal theories. The Class Representative's interests are aligned with the Class Members, satisfying the typicality

---

[5] A more detailed explanation of the requirements of Rules 23(a) and 23(b)(3), and how those requirements are met in this case, was set forth in Plaintiffs' motion for preliminary approval Doc. 47, Motion for Preliminary Approval. For the convenience of the Court, Plaintiffs summarize those points here.

requirement. Rule 23(a)(3); *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003); *Am. Med. Sys.*, 75 F.3d at 1082.

*Adequacy*. As previously detailed, the Class Representatives have common interests with the Class Members and have actively engaged in the Action under the guidance of experienced Class Counsel, who have vigorously prosecuted this case. Dann Dec., ¶ 7. This meets the adequacy requirement of Rule 23(a)(4). *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

*Predominance and Superiority*. The predominance requirement of Rule 23(b)(3) is met inasmuch as the key question at issue is whether Wells Fargo engaged in a uniform course of conduct applicable to all Class Members by failing to offer loan modifications because of a widespread software error, creating predominant and common issues of fact and law. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). The superiority requirement of Rule 23(b)(3) is also met because, *inter alia*, the cost of litigating on an individual basis would be substantial and the most economically feasible way of resolving claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)).

The requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and certification of the Class was and is appropriate.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval.

Respectfully submitted,

By: */s/ Brian D. Flick, Esq.*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Office: (216) 373-0539
Facsimile: (216) 373-0536
Email: notices@dannlaw.com

Christopher D. Stock (0075443)
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Rd., Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
Email: cstock@msdlegal.com
Email: tcoates@msdlegal.com

Gretchen Freeman Cappio**
Adele A. Daniel
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: gcappio@kellerrohrback.com
Email: adaniel@kellerrohrback.com

Alison E. Chase
Matthew J. Preusch
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497
Email: achase@kellerrohback.com
Email: mpreusch@kellerrohback.com

Richard M. Paul III**

Laura C. Fellows**
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Email: Rick@PaulLLP.com
Email: Laura@PaulLLP.com

Michael L. Schrag**
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
Email: mls@classlawgroup.com

***Admitted Pro Hac Vice***
***Counsel for Plaintiffs and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2022, a true and accurate copy of the foregoing filing was filed electronically and served upon all parties via the Court's CM/ECF system.

*/s/Brian D. Flick, Esq.*
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
DannLaw
*Co-Counsel for Plaintiffs and the Putative Class*