UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **ETHAN RYDER et al.,** *on behalf of themselves and all others similarly situated,* <br> Plaintiffs, <br> v. <br> **WELLS FARGO BANK, N.A.** <br> Defendant. | Case No.1:19-CV-638 <br><br> Judge Timothy S. Black <br><br> Magistrate Judge Karen L. Litkovitz |

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

Pursuant to the Court's August 17, 2021 Order: (1) Granting Unopposed Motion for Preliminary Approval of Class Action Settlement); and (2) Scheduling Fairness Hearing (Doc. 50) and pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Class Counsel for Class Representatives Ethan Ryder, Jose Aguilar, James Chambers, Kimberly Duncan, Elizabeth Manley, Maureen Mann, and Viola Thomas respectfully move this Court for (a) an award of attorneys' fees in the amount of $2,719,093.00, which is 22.7% of the 12,000,000 settlement (b) reimbursement of $43,726.97 in litigation expenses incurred by Class Counsel in this litigation, and (3) $17,000 in Class Representative Service Awards for the time, effort, and risk associated with acting as class representatives. If awarded, these amounts will be paid by defendant Wells Fargo separate from and in addition to the $9,098,907 in payments the bank will make to Class Members.

The grounds for this motion are set forth in the accompanying Memorandum in Support. A proposed form of Order is also attached.

## MEMORANDUM IN SUPPORT

## INTRODUCTION & PRELIMINARY STATEMENT

The proposed $12 million settlement of this Action involving Wells Fargo's erroneous denial of trial loan modifications to over 1,800 borrowers who did not lose their homes to Wells Fargo in foreclosure is comprised of roughly $9,098,907.00 in direct non-reversionary cash payments to the Class, $2,719,093.00 in attorneys' fees, $43,726.97 in litigation expenses, $17,000.00 in Service Awards, and settlement administration costs and expenses not to exceed $100,000.00. Class Counsel fully support the settlement and believe it is an excellent outcome for class members than the alternative of litigating this Action for several years with the risk of recovering nothing. The Settlement was achieved only after the factual record surrounding the error was fully developed in a related case and following two lengthy, hard-fought mediation sessions with Retired United States Magistrate Judge Morton Denlow.

Class Counsel respectfully submit that this result was achieved through their skill, tenacity, and effective advocacy. As detailed below and in the attached Declarations of Class Counsel ("Declarations"), Class Counsel dedicated substantial resources prosecuting this litigation in both this Court and others, collectively in excess of 1,000 hours, with substantial additional hours anticipated in the future for settlement approval and administration. Class Counsel's efforts included, among other things: drafting multiple detailed complaints; briefing motions to dismiss; successfully litigating two related discovery-only actions; analyzing the

strengths and weaknesses of the case; and, participating in two day-long mediation sessions with Judge Denlow. Doc. 55-2, PageID #1195-1196, Dann Dec, at ¶ 8.[1]

The Settlement was achieved despite considerable risks and challenges confronting this Action. As detailed in the Declarations, Plaintiffs faced substantial legal hurdles in maintaining their claims. Wells Fargo vigorously contested liability on all claims. Among other contentions, Wells Fargo argued that purported violations of Freddie Mac, Fannie Mae, or FHA requirements failed to provide a cause of action. Wells Fargo also asserted that the statute of limitations for several causes of action had passed, and that equitable tolling did not apply. In short, Wells Fargo pressed substantial defenses to liability – and indeed succeeded on motions to dismiss in cases filed by some Named Plaintiffs here. Settlement did not occur until plaintiffs filed several amended complaints in multiple cases, multiple motions to dismiss were fully briefed, and a motion to stay proceedings pending a decision from the Judicial Panel on Multidistrict Litigation was filed and opposed.[2]

As compensation for their successful efforts on behalf of the Class, Class Counsel request a fee award in the amount of $2,719,093.00, which is approximately 22.7% of the $12,000,000 overall settlement. Importantly, the attorneys' fees were negotiated *after* the $9,098,907 fund for Class Member payments was agreed upon, and will be paid separately by Wells Fargo. Thus, the

---

[1] The Declaration of Marc Dann in support of Plaintiffs' Motion for Final Approval and this Fee Application ("Dann Declaration" or "Dann Dec.") (Doc. 55-2) filed contemporaneously herewith contains a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the value of the Settlement to the Class compared to the risks and uncertainties of continued litigation; the terms of the Plan of Allocation for the Settlement proceeds; and a description of the services Class Counsel provided for the benefit of the Class. For the sake of brevity, Plaintiffs respectfully refer the Court to the Dann Declaration for a more fulsome explanation of these facts.

[2] *See* Dann Dec., ¶ 8, Doc. 55-2, PageID # 1195-1196.

requested attorneys' fee award will not in any way reduce the amount of payments made available to Class Members. Dann Dec., at ¶ 6; Doc. 55-2, PageID # 1195).

The requested fee represents 22.7% of the $12,000,000 settlement which is reasonable and, in fact, on the low end of the 20% to 30% range commonly awarded in comparable settlements, particularly for a case providing direct non-reversionary payments to class members and involving this level of complexity and risk. Using the lodestar method as a cross-check also reveals that a 2.35 multiplier is reasonable and below what is often awarded in complex class actions with substantial contingency risks such as this one. In addition, the Settlement has been exceedingly well-received by the Class: there is only 1 remaining objection and 10 class members or 0.55% of the class opted out.

Class Counsel further seek the reimbursement of reasonable litigation expenses totaling roughly $43,726.97 and approval of Class Representative Service Awards totaling $17,000 which are also reasonable for this case.[3]

**FACTUAL BACKGROUND**

In the interest of brevity, and to avoid unnecessary duplication, Class Counsel will not rehash the factual background of this Action. Rather, Class Counsel direct the Court to the Motion for Preliminary Approval of Class Action Settlement, the accompanying Dann Declaration, and the accompanying Motion for Final Approval of Class Action Settlement,

---

[3] The amounts of these requests were specifically included in the Class Notice and were published on the Settlement Website, https://www.ryderwfsettlement.com, at pages 1, 5, 6-7 (Last visited on Nov. 29, 2021); *see also* Doc. 47-1, at 961, 965, and 967.

which provide a detailed description of the factual and procedural background of this Action and related litigation, as well as the events that led to the Settlement.[4]

## LEGAL ARGUMENT

I. **CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES CALCULATED AS A PERCENTAGE OF THE FUND.**

### A. *Class Counsel's Request Based on a Percentage of the Fund Is Fair and Reasonable.*

The class settlement here presents a sum certain for the benefit of class members. "The source of the fee award that is requested here closely resembles the award of fees in common fund cases." *In re Teletronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1040-41 (S.D. Ohio 2001), *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001). The Supreme Court has long recognized that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," the "common fund." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). "In general, there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The percentage of the fund method is preferred in cases like this one that closely resemble a common fund case. *In re Teletronics*, 137 F. Supp. 2d at 1040-41; s*ee also Rawlings*, 9 F.3d at 515 ("We are aware of the recent trend towards adoption of a percentage of the fund method in such cases."). It has been

---

[4] *See, e.g.*, Dann Dec., at ¶¶ 4-8; Doc. 55-2, PageID # 1195-1195).

5

observed that "the percentage of the fund method more accurately reflects the results achieved." *Id.* at 516 (internal citations omitted). "'[U]nder the percentage of the fund method, the court simply determines a percentage of the settlement to award the class counsel.'" *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (quoting *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F. Supp. 2d 907, 922 (N.D. Ohio 2003)).

As described below, Class Counsel's fee request in this case is reasonable under each of the *Ramey* factors applied by courts within the Sixth Circuit and should be approved.

### B. The Requested Attorneys' Fees Are Reasonable Under the Percentage of the Fund Method.

Class Counsel's request for an award of 22.7% of the common fund is below the percentages most often awarded in class actions in the Sixth Circuit.

In this Circuit, "[a]ttorneys fees awards typically range from 20 to 50 percent of the common fund." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 280-81 (S.D. Ohio 2006) (collecting cases); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986); *see also Lonardo*, 706 F. Supp. 2d at 803 (26.4%); *Kritzer v. Safelite Solutions, LLC*, No. 2:10–cv–0729, 2012 WL 1945144, at *9-10 (S.D. Ohio May 30, 2012) (52%); *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509, at *37 (S.D. Ohio Apr. 4, 2014) (21%); *Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 2755711, at *4 (S.D. Ohio Jan. 18, 2019) (33.33%); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *5 (S.D. Ohio Oct. 3, 2018) (noting that "whether 24.9% or 33%, this Court finds Plaintiff's request is reasonable and well within the ranges of fees typically approved by courts in the Sixth Circuit."); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *1 (W.D. Ky. Aug. 23, 2010) (approving attorney fees of

more than 50% of settlement, where the settlement fund could potentially increase and bring attorney fees down to 20%); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (approving 1/3 for attorney fees where settlements totaled more than $300 million); *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2013 WL 1089549 (N.D. Ohio Mar. 14, 2013) (approving 25% attorney fees); *Clevenger v. Dillards, Inc.*, No. C–1–02–558, 2007 WL 764291, at *2 (S.D. Ohio Mar. 9, 2007) (approving fee award of 29% of gross settlement fund in ERISA case).

Here, Class Counsel are applying for a fee award of $2,719,093.00, or 22.7% of the total Settlement amount of $12,000,000.00, which is within "the range of reasonableness" for fee awards and at the low end of this Circuit's general spectrum for reasonableness. Taking into account the inherent complexity of this class action, the several years of work performed, and the pending motion to dismiss, Class Counsel's application for 22.7% attorneys' fees is justified and reasonable under the percentage of the fund method, especially because the attorneys' fees will not reduce the over $9 million available for direct distribution to Class Members.

### C. The Six **Ramey** *Factors Confirm that Class Counsel's Attorney Fee Request is Fair and Reasonable.*

When reviewing the reasonableness of an attorney fee award requested in a class action, courts consider factors such as (1) the value of the benefit rendered to the class; (2) whether the services were undertaken on a contingent fee basis; (3) the value of the services rendered by the attorneys, if measured on an hourly basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.

1996).[5]

Analyzing the six *Ramey* factors set out above makes it clear that the attorneys' fees requested are reasonable.[6] District courts in the Sixth Circuit "generally consider the most important factors to be the value of the benefit rendered and the value of the services on an hourly basis."[7]

        **1.    The value of the benefit rendered to the Class supports the requested fee.**

This class action was filed on behalf of residential mortgagees who were entitled to more favorable loan modifications based on a formula Wells Fargo was required to use. However, Wells Fargo erroneously denied Class Members the trial loan modifications because a software error caused them to misapply the formula. Accordingly, some Plaintiffs and Class Members paid Wells Fargo substantially more money under the mortgage agreement compared to what they would have paid under the more favorable loan terms if they had been given the loan modification that Wells Fargo should have offered to them. Others were forced into short sales or foreclosure conducted by successor mortgage loan servicers. The benefit rendered to Class Members of over $9 million of direct payments with attorneys' fees and expenses, settlement

---

[5] More generally, Prof. Cond. R. 1.5 lists the following factors to be considered in determining the reasonableness of a fee: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

[6] *In re Countrywide*, 2010 WL 3341200 at *1.

[7] *Id.* (citing *In re Sulzer*, 268 F. Supp. 2d at 930).

administration fees and expenses, and Class Representative Service Awards being paid separate is a tremendous recovery especially considering that Wells Fargo previously submitted payments to Class Members relating to the loan modification denials at issue in this case and the legal hurdles Plaintiffs faced (*i.e.* statute of limitations, proving damages, gaining class certification, potential appeals of decision favorable to Plaintiffs, etc.).

      **2.    The value of the services on an hourly basis supports the requested fee.**

As this Court and others within this Circuit have noted, where the percentage approach is reasonable, a lodestar cross-check may be unnecessary. *See, e.g., Rikos v. Procter & Gamble Co.*, 2018 WL 2009681, at *10 (S.D. Ohio Apr. 30, 2018) (Black, J.); *Blasi v. United States Debt Servs., LLC*, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019) (granting fees based on percentage without cross-check); *Dick v. Sprint Commc'ns Co. L.P.*, 257 F.R.D. 282, 300 (W.D. Ky. 2014) (same). A lodestar cross-check, while unnecessary, also supports the requested fee. In cases of this nature, fees representing multiples above the lodestar are regularly awarded to reflect the contingency fee risk and other relevant factors.

Here, Class Counsel spent a total of 2,007.25 hours of attorney and other professional support time prosecuting this Action.[8] This yields a lodestar for Class Counsel equal to approximately $1,156,209.42.[9] The requested 22.7% fee, which amounts to $2,719,093.00 represents a multiplier of 2.35.[10] Multipliers greater than 2.35 are often used in the Sixth Circuit

---

[8] *See* Dann Dec., at ¶ 14, Doc. 55-2, PageID # 1197; *see also* Exhibits 1, 2, 3, and 4, attached hereto, which are Declarations from Michael Schrag from Gibbs Law; Terence R. Coates of Markovits, Stock & DeMarco, LLC; Gretchen Capio of Keller Rohrback, LLP; and Richard Paul III of Paul LLP, each verifying the amount of hours their respective firms have committed to prosecuting this Action.

[9] *See* Dann Dec., at ¶ 14; Exhibit A to the Dann Declaration..

[10] *See id.*; Exhibit B to the Dann Declaration.

9

for similar complex class actions involving significant contingency risks.[11] Thus, if the Court wishes to employ a lodestar crosscheck, the 2.35 multiplier is consistent with the law in this Circuit and confirms the reasonableness of the award. This lodestar does not include the numerous hours that some Class Counsel spent litigating *Hernandez* (on the same legal and factual issues present here) through class certification and all the way to summary judgment. The facts and evidence they developed in *Hernandez* were used to draft a detailed complaint to support the claims asserted in the present case.

Further, Class Counsel will continue to spend substantial time working on this case in preparing for the January Fairness Hearing and working with JND to administer the Settlement. Class Counsel expect to spend a substantial amount of time working with JND and Class Members to answer Class Members' questions about the Settlement and in ensuring that Class Members' settlement checks are received and cashed. *See* Dann Dec., at ¶ 15, Doc. 55-2, Page ID # 1198) (noting that Class Counsel reasonably anticipate spending an additional $300,000.00 in lodestar from now until the end of this Action). This additional time and effort was not considered when calculating the lodestar total and resulting multiplier listed above, which further supports the reasonableness of Class Counsel's fee request.

---

[11] *See In re Cardinal Health*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (lodestar multiplier of six)*; Merkner v. AK Steel*, No. 1:09–CV–423–TSB (S.D. Ohio, Order filed Jan. 10, 2011*,* at p. 6) (awarding 10% of the cash portion of the settlement representing a lodestar multiplier of 5.3); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (finding fee award equivalent to 4.5 to 8.5 lodestar multiplier "unquestionably reasonable"); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915, 924 (E.D. Ky. 1986) (finding a multiplier of 5 was appropriate); *see also In re Sulzer*, 268 F. Supp. 2d at 939 n.45 (noting that a review of 1,120 class action cases from 1973 through 2003 had effective multipliers averaging: "(a) 3.89 across all 1,120 cases, (b) 4.50 across the 64 cases where the recovery exceeded $100 million, and (c) 2.97 across the ten mass tort cases.").

### 3. The risk of no compensation supports the requested fee.

Class Counsel prosecuted this case entirely on a contingent fee basis. *See* Dann Dec., at ¶ 14. Accordingly, Class Counsel took the considerable risk that they would never be compensated for either the time expended or out-of-pocket expenses incurred in litigating this Action. "[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1043. Plaintiffs faced real legal risks through the continued prosecution of this case (*i.e.* statute of limitations, proving damages, gaining class certification, potential appeals of decisions favorable to Plaintiffs, etc.). Dann Dec., at ¶ 4, Doc. 55-2, PageID # 1194). Further, Class Counsel and Plaintiffs understood the uncertainty of cases involving various causes of action for plaintiffs from different states and that they pose substantial risk to Plaintiffs' claims. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 523 ("Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict").

Accordingly, this factor supports awarding the requested 22.7% fee.[12]

### 4. Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others supports the requested fee.

In evaluating the reasonableness of a fee request, the Court considers society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others: "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 534.

---

[12] *See In re Countrywide*, 2010 WL 3341200 at *11 (contingent fee supports an award of attorneys' fees).

As the Court in *In re Telectronics* stated:

> [I]n litigating this case, Class and Plaintiff's Counsel expended significant resources of both time and monies … We believe that, without such a class action, small individual claimants would lack the resources to litigate a case of this magnitude. Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.

137 F. Supp. 2d at 1042-43.

Here, as demonstrated above, Class Counsel's efforts in pursuing this Action provided and continue to provide a substantial benefit to society. Holding a national bank responsible for failing to provide required loan modifications to its customers benefits the greater society as a whole. Further, Class Counsel's efforts in obtaining a settlement that included over $9 million in direct payments to roughly 1,830 class members provides a tremendous benefit to society by efficiently achieving this result through one case instead of many individual actions. This case was made even more difficult because of the fact that Wells Fargo's loan modification misdeed took place over 10 years ago, thereby raising statute of limitations issues for Plaintiffs' claims. Accordingly, this factor supports an award of attorneys' fees of $2,719,093.00.

### 5. The complexity of the litigation supports the requested fee.

Courts in this Circuit also consider the complexity of the litigation in determining the reasonableness of an attorneys' fee award. While "[m]ost class actions are inherently complex,"[13] this Action presented a number of complicated legal and factual issues concerning: (1) various claims from plaintiffs from different states; (2) Wells Fargo's previous cash payment to Class Members for the loan modification error that is the subject of this Action; (3) Wells Fargo's failure to disclose that more than 1,000 class members were not identified prior to the first

---

[13] *In re Telectronics*, 137 F. Supp. 2d at 1013.

mediation in this case; and (4) Wells Fargo's resistance to efforts by Class Counsel on behalf of individual class members to seek discovery in State Court prior to filing this matter and aggressive opposition to this and other cases involving class embers. Dann Dec. at ¶ 4, Doc. 55-2, PageID # 1194.

This hard-fought settlement followed hard-fought litigation in multiple lawsuits in multiple jurisdictions involved two full-day mediations with Judge Denlow before the parties reached a final settlement in principle. Dann Dec. at ¶ 5. This case efficiently resolved several pending cases in multiple jurisdictions, achieved additional substantial payments to Class Members even after Wells Fargo had made earlier direct payments to members of the Class, involved Wells Fargo adding hundreds of additional Class Members to the Class definition after the first mediation, involved four different categories of Class Members with each category being allocated different payment amounts, and was only resolved after two day-long meditation sessions with a seasoned mediator. Accordingly, this factor supports an award of attorneys' fees.

### 6. The professional skill and standing of counsel involved on both sides supports the requested fee.

Finally, courts in this Circuit evaluate the professional skill and standing of counsel in determining the reasonableness of a fee request. Here, the skill and standing of counsel for all parties was of the highest caliber.

Class Counsel include the law firms of (1) Markovits, Stock & De Marco, LLC; (2) DannLaw; (3) Paul LLP; (4) Keller Rohrback LLP; and (5) Gibbs Law Group. These law firms have considerable experience in complex litigation, including class actions against financial institutions and have recovered hundreds of millions of dollars for consumers in such cases.[14]

---

[14] Dann Dec., at ¶ 1 and Exhibit B, Doc. 55-2, PageID # 1193, 1220; Resumes for Gibbs Law Group;

The quality of opposing counsel is also important in evaluating the quality of services rendered by Class Counsel.[15] Defendant has been represented throughout this litigation by Winston and Strawn, which has hundreds of attorneys in over 15 offices all over the world.[16] Winston is a first-tier law firm with experience in defending against class action litigation and representing mortgage servicers in individual litigation. Additionally, Wells Fargo had in-house counsel lending their internal expertise and knowledge.

## II. CLASS COUNSEL SHOULD BE REIMBURSED FOR REASONABLY-INCURRED OUT-OF-POCKET LITIGATION EXPENSES.

Class Counsel are also requesting reimbursement of the out-of-pocket expenses necessarily incurred and advanced by Class Counsel in the prosecution of the litigation in the amount of $43,726.97. Exhibit C to the Dann Declaration details the total expenses Class Counsel incurred and underwrote during the prosecution of this Action, all of which were at risk in this litigation. These expenses are a necessary part of litigation of this magnitude and scale and were essential to enable Plaintiffs to achieve the results now before this Court. Similar to the common fund doctrine, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting

---

Markovits, Stock & De Marco, LLC; Keller Rohrback LLP and Paul LLP are attached as Exhibit B to each firm's declaration: Schrag Declaration (attached as **Exhibit 1**), Coates Declaration (attached as **Exhibit 2)**; Cappio Declaration (attached as **Exhibit 3**); Paul Declaration (attached as **Exhibit 4**).

[15] *See In re Delphi Corp. Sec. Deriv. & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."). Accordingly, this factor supports an award of attorneys' fees.

[16] https://www.winston.com/en/where-we-are/index.html (last visited Jan. 3, 2021).

with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535.

Class Counsel's expenses in this case are reasonable. There are three major categories of expenses: mediation, expenses related to the litigation of individual cases on behalf of class members and named plaintiffs, and travel for mediation.

Included in the amount of expenses is $24,343.35 Class Counsel paid to the mediator, Judge Denlow.[17]

JND's additional expenses and fees in this case will be submitted for the Court's review during and after the administration of the Settlement.[18]

From the beginning of the case, Class Counsel recognized that they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved.[19] Class Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate them for the lost use of the funds advanced to prosecute this Action.[20] Thus, Class Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.[21] Class Counsel carefully reviewed all expenses

---

[17] Dann Dec., at Exhibit C, Doc. 55-2, PageID # 1223.

[18] *Id*. at ¶ 13; Doc. 55-2, PageID # 1197.

[19] *Id*. at ¶ 14.

[20] *Id*.

[21] *Id.*

submitted to ensure that they accurately reflected costs necessarily incurred in obtaining the Settlement.[22]

As the Notice indicates, approval of the Settlement and Plan of Allocation is separate from the approval of Class Counsel's application for an award of fees and expenses. Any determination with respect to Class Counsel's application for an award of fees and expenses will not affect the Settlement, if approved.

### III. THE COURT SHOULD APPROVE SERVICE AWARDS FOR THE CLASS REPRESENTATIVES

Class Counsel are also requesting Service Awards totaling $17,000 for the Class Representatives ($5,000.00 for Ethan Ryder, $2,000.00 for Jose Aguilar, $2,000.00 for James Chambers, $2,000.00 for Kimberly Duncan, $2,000.00 for Elizabeth Manley, $2,000.00 for Maureen Mann, and $2,000.00 for Viola Thomas.)[23] Mr. Ryder has been a named Plaintiff in this case since its inception and is the only class representative to attend the first all-day mediation session with Judge Denlow, which justifies a Service Award to him that is slightly greater than his fellow Class Representatives. Ryder Dec., at ¶ 2; Doc. 55-4, PageID # 1256. Service awards are payments that are intended to cover the time and money that class representatives spend fulfilling their responsibilities. Courts approving service awards "have stressed that incentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). "Yet applications for incentive awards are scrutinized carefully by courts

---

[22] *Id*. at ¶ 16.

[23] Dann Dec. at ¶ 9 (Doc. 55-2, PageID # 1196); *see also* Declarations in support of this Settlement for each of the Class Representatives are attached as Exhibits 4-10 to the Motion for Final Approval (Docs. 55-3 through 55-10).

who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Id.* This is far from such a situation.

The Class Representatives devoted their time to this cause without any expectation of a service award. Their initiative, time, and effort were essential to the prosecution of the case and were central to the remarkable results achieved. The Class Representatives also participated in settlement talks and, in one case, attended mediation sessions.[24] The Class Representatives had stayed apprised about the case and willingly gave of their time.[25]

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request this Court to grant their motion for an award of attorney's fees of $2,917,093.00; for reimbursement of Class Counsel's out-of-pocket litigation costs and expenses incurred before preliminary approval totaling $43,726.97; and for service awards totaling $17,000.00 for the Class Representatives.

Respectfully submitted,

By: */s/Brian D. Flick, Esq.*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Office: (216) 373-0539
Facsimile: (216) 373-0536
Email: notices@dannlaw.com

---

[24] *See* Aguilar Dec., at ¶ 2 (Doc. 55-9, PageID # 1271); Chambers Dec., at ¶ 2 (Doc. 55-5, PageID # 1259); Duncan Dec., at ¶ 2 (Doc. 55-8, PageID # 1268); Manley Dec., at ¶ 2 (Doc. 55-10, PageID # 1274); Mann Dec., at ¶ 2 (Doc. 55-6, PageID # 1262); Ryder Dec., ¶¶ 2-3 (Doc. 55-4, PageID # 1256); and Thomas Dec., at ¶ 2 (Doc. 55-7, PageID # 1265).

[25] Dann Dec. at ¶ 9.

Christopher D. Stock (0075443)
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Rd., Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
Email: cstock@msdlegal.com
Email: tcoates@msdlegal.com

Gretchen Freeman Cappio**
Adele A. Daniel
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: gcappio@kellerrohrback.com
Email: adaniel@kellerrohrback.com

Alison E. Chase
Matthew J. Preusch
**KELLER ROHRBACK L.L.P.**
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497
Email: achase@kellerorhback.com
Email: mpreusch@kellerrohrback.com

Richard M. Paul III**
Laura C. Fellows**
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Email: Rick@PaulLLP.com
Email: Laura@PaulLLP.com

Michael L. Schrag**
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

Email: mls@classlawgroup.com

*\*\*Admitted Pro Hac Vice*
*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 11, 2022, a true and accurate copy of the foregoing *Plaintiffs' Unopposed Motion for Attorneys' Fees, Litigation Expenses, and Class Representative Service Awards* was filed electronically and served upon all parties via the Court's CM/ECF system.

<u>/s/*Brian D. Flick, Esq.*</u>
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Daniel M. Solar (0085632)
DannLaw
*Co-Counsel for Plaintiffs and the Putative Class*